JOHN MARTIN *vs.* JOSEPH W. WAKEFIELD and another, Intervenors.

### December 12, 1889.

**Lien for Hauling Logs—Use of Team.**—Under Gen. St. 1878, c. 32, § 63, "manual labor" in cutting, banking, or driving logs or timber includes the use of all implements or instrumentalities actually used in and necessary to the performance of such labor by the lumberman. Hence, where a man and his team are employed, at a gross price for both, to haul or bank logs, his lien on the logs extends to the use of the team. The fact that the employer may afterwards put them to work separately, on different parts of the work, is immaterial.

**Same—Entire Contract for Logs of Different Marks.**—Where the whole of the services are performed under one contract of employment in getting out a single lot of logs, two different marks, however, being put on different portions of them, according to their grade or quality, the laborer may claim and enforce his lien for his entire services upon that part bearing one of these marks.

Plaintiff brought this action in the district court for Hennepin county against Aaron Palmer, to enforce a lien for labor on pine saw logs, marked "P* W," under a contract with him. Joseph W. Wakefield & Co. were admitted as intervenors, and alone answered the complaint. The action was tried by *Lochren,* J., who ordered judgment

for plaintiff for $129.75 and interest, and making the indebtedness a lien on the logs of the above mark. The intervenors appeal from an order refusing a new trial.

*Choate & Merrill,* for appellants.

*John T. Byrnes,* for respondent.

MITCHELL, J. Gen. St. 1878, *c.* 32, § 63, provides that "any person who may do or perform any *manual* labor in cutting, banking, driving," etc., "any logs or timber in this state, shall have a lien thereon * * * for the amount due for such services." The defendant employed plaintiff and his team, at a gross price per month for both, to work in a logging camp in getting out logs. As a matter of fact, during a great part of the employment the defendant worked them separately, the team being used in hauling the logs, while plaintiff was occupied in bringing in supplies with other teams or taking care of the stock in the logging camp stable.

The principal question here presented is whether plaintiff's lien on the logs extends to the use of the team, the intervenors' contention being that "manual labor" applies only to the work of plaintiff's own hands. Such a construction is too narrow, and would in most cases render the statute nugatory and defeat the remedy which the legislature intended to give. In almost every department of the work of logging, certain tools, appliances, or instrumentalities are indispensably necessary to the performance of the labor. The timber cannot be cut without axes, or hauled or "banked" without teams. Remedial statutes are to be liberally construed to advance the remedy. The legislature could not have intended to exclude the use of those appliances or instrumentalities which are absolutely necessary to the performance of the various departments of labor enumerated in the statute. We are therefore of opinion that "manual labor," as used in this connection, includes the use and earnings of all implements, instrumentalities, or agencies, such as axe, cant-hook, team, or the like, which are actually used in and necessary to the performance of such labor by the lumberman or logger. *Hale* v. *Brown,* 59 N. H. 551. See, also, *Winslow* v. *Urquhart,* 39 Wis. 260, and *Hogan* v. *Cushing,* 49 Wis. 169, (5 N. W. Rep. 490.) And we fully agree with the learned trial judge that where, as in this case, "a man

v.42M—12

and his team are employed on the work at a gross price for both, the fact that the employer may have them work separately the whole or a part of the time can make no difference." This may often be necessary as a matter of convenience to the employer, as where teams are "doubled," and the superfluous drivers have to be set at some other department of the work.

There was a conflict in the evidence as to whether the logs on which plaintiff worked were all marked with the same mark, (that on which the lien was claimed,) or whether two different marks were used on different portions of the logs. The intervenors assign as error the fact that the court states, in a memorandum attached to his findings, that the evidence that part of the logs had a mark put on them different from that on which the lien is claimed was disregarded, because not pertinent to any issue under the pleadings. Assuming, without deciding, that a statement made by the trial judge in such a memorandum, but not appearing as a ruling or otherwise in the "settled case," can be assigned as error, the evidence referred to was wholly immaterial. It is not pretended that plaintiff's labor was performed under two separate contracts of employment, or that two distinct lots of logs were worked upon by him. On the contrary, it appears that the labor was all performed under one contract, and in getting out one lot of logs; but the plaintiff swore that they all had the same mark put on them, (that on which he claimed a lien,) while defendant swore that two marks were used; that "the good logs were marked ' P* W,' and the poor ones 'R* O.' " Had all the logs on which plaintiff labored, say 1,000,000 feet, been marked alike, there could be no doubt but that he could have enforced his lien for his whole labor against any portion of them, and that such labor would be deemed "wholly performed" on such logs, within the meaning of the statute. And where the labor is, as in this case, performed under a single contract of employment upon a single lot of logs, different portions of which are, however, differently marked to distinguish the grade or quality, we do not see why a party may not claim and enforce his lien for the whole of his services exclusively upon that part of the logs bearing one of the two marks.

. Order affirmed.