EMERY H. BREAULT v. ELZOR ARCHAMBAULT and Others.

M. J. LANE v. SAME.[1]

May 14, 1896.

Nos. 9890–9891—(78–79).

**Log Liens—Who Entitled to—Cook.**

Under the provisions of the log lien law of 1876 (G. S. 1894, §§ 2451–2465, inclusive), a cook and his assistant, employed at a logging camp for the purpose of cooking for the men actually and directly engaged in cutting, hauling, and banking logs, are entitled to liens upon such logs for the amount due for such services.

**Same—Blacksmith.**

*Held,* further, that a blacksmith employed at such camp in shoeing the horses, in repairing the sleds, and in mending and keeping in order tools used by the men actually and directly engaged in the common enterprise, is also entitled to a lien upon the logs.

**Same—Manual Labor—Teams and Servants.**

The manual labor for which a lien is given under section 2451 is not merely the personal labor of a lien claimant, but includes labor performed by his teams and servants under a contract for a gross price per month for both.

Appeal by certain defendants, except Lane & Raymo, in each case from orders of the district court for St. Louis county, Ensign, J., overruling a demurrer to the complaint. Affirmed.

1 Reported in 67 N. W. 348.

*Draper, Davis & Hollister*, for appellants.
*Teare & Middlecoff*, for respondents.

COLLINS, J.[2]  These actions, brought to enforce log liens under the provisions of G. S. 1894, §§ 2451–2465, inclusive, against the same defendants, were argued and submitted together.

The complaint in the case in which Breault was plaintiff set forth three causes of action,—the first being on account of services rendered by plaintiff himself, as a cook in the logging camp; the second, for services rendered at the same time and place by another person, as assistant cook or "cookie," assigned to plaintiff; and the third, for services rendered by still another person, as a blacksmith, at the camp, and necessary for the performance of the work, such as shoeing the horses and repairing the sleds used in hauling the logs, and repairing the tools used by the men engaged in cutting the logs, also assigned to plaintiff.

The complaint in the Lane case alleged that plaintiff, at the request of Lane, and defendants Lane & Raymo, the contractors, furnished two teams of horses, and two teamsters to care for and drive the teams, at an agreed price per month for each team and teamster, for the purpose of skidding, hauling, and banking the logs.

The questions raised by a general demurrer to each complaint are whether, under the statute, a lien on the logs is given to a person who works as a cook, or as an assistant to the cook, in a lumbering camp, or a lien on the logs to the blacksmith who performs the work we have mentioned at such a camp, and also whether, under the same statute, a lien upon the logs is given to a person who, at the instance of those who contract to cut and bank the logs, furnishes a team and teamster, at a gross price per month for both, to skid, haul, and bank such logs, the person so furnishing not being personally engaged in the work himself.

That portion of the statute conferring the right of lien (section 2451) reads thus:  "Any person who may do or perform any manual labor in cutting, banking, driving, rafting, cribbing, or towing any logs  *  *  *  shall have a lien thereon as against the owner thereof and all other persons  *  *  *  for the amount due for

[2] Buck, J., absent, took no part.

such services, and the same shall take precedence of all other claims thereon."

It is the position of defendants (appellants) in the Breault case that the services rendered by plaintiff and his assignors in cooking and in blacksmithing do not come within the provisions of the statute, because these services were not performed in cutting or banking the logs. The claim is for a strict construction of the statute, confining its application to those persons who actually and personally cut or bank, not extending its application to those whose services are as requisite and essential to properly accomplish the work to be done as are the services of the men who cut or bank the logs with their own hands. If this strict construction is to prevail, Breault's claim for liens cannot, in whole or in part.

That the statute in question was enacted to correct an abuse and to remedy an evil which had grown to enormous proportions is a matter of common history. Many owners of pine land habitually entered into logging contracts with reckless and irresponsible parties, the purpose and inevitable result being that the men who did the work were unable to collect their wages. The statute was passed to protect these men and the interests of labor, and a sound public policy require that it be liberally construed; that a construction be placed upon it which will protect all who, in furtherance of the common object, go into the logging camp, and there engage in the business of converting trees into logs and timber, in hauling the same to the banks of the streams, and there driving or rafting the product of their labor to market.

It is evident that a cook or a blacksmith is as essential to a logging crew as is the man who swings an ax or drives a team, and it is also evident that both perform manual labor. If the ax man or the teamster was compelled to leave his work, and spend two hours of each day in preparing his own food, or in shoeing his horses, or repairing his sled or tools, would it be suggested that his time while so engaged should be deducted from his day's work, and a lien allowed for the balance only? We believe that no one would think of asserting such a proposition. And, if this be so, why should a person who renders these services, but performs no other, be declared outside of the statute, and thus deprived of a lien? The camp cook and the blacksmith are part of the crew

whose business it is to cut and bank logs. They do not personally and directly engage in the work of cutting the logs or in handling them, but it is absolutely necessary that the men personally and' directly engaged be furnished with food, that the animals be shod, that the sleds be kept repaired, and the tools be sharpened and kept in order. Nor do the men whose business it is to open up the logging roads, to keep them clear of snow and in good order for hauling, engage directly in cutting or hauling. But all of the men upon the ground are engaged in a common enterprise,—that of cutting and hauling logs. They are all employed at and about the logging camp, for the sole purpose of reducing the native trees to logs and timber, and in banking them upon the streams. They go into the woods for that purpose only, and, at the end of the season, they have done nothing else, although, for convenience and economy, they may have labored for the common end in different departments.

The policy of this court when required to construe the log lien law was announced in Martin v. Wakefield, 42 Minn. 176, 43 N. W. 966. It was there declared to be a remedial statute, to be liberally construed to advance the remedy. So construing it, we are of the opinion that such necessary persons in a logging crew as the camp cook, an assistant, if assistance be required, and a blacksmith, whose services are needed and performed in the manner alleged in the complaint, are entitled to the benefits of the log lien law. Nor are we without authority upon the right of a cook to enforce a lien under a similar statute. Winslow v. Urquhart, 39 Wis. 260.

As before stated, the plaintiff in the Lane case furnished, at the request of the contractors, two teams, and two teamsters to care for and drive the teams, at a gross price per month for each team and teamster. If plaintiff had driven these teams, the case would be covered by that of Martin v. Wakefield, supra, in which it was held that, when a man and team were employed at a gross price for both, his lien on the logs extended to the use of the team. But the difference is that plaintiff Lane performed no manual labor personally, all being done by the hired teamsters. But we cannot assent to defendants' contention that there is a marked distinction between the cases. Plaintiff was acting through her servants, and

the terms of the statute, under the application of the maxim, "He who acts through another acts himself," are logically applicable to one who provides teams with which to haul logs, and men to drive the teams, as did the plaintiff Mrs. Lane.

In determining her right to a lien, we are to remember that section 2464 provides that the log lien law is not to inure to the benefit of persons interested in contracting for the cutting or hauling of logs by the thousand. See King v. Kelly, 25 Minn. 522. It is declared that it is intended for the protection of laborers, and not for the benefit of contractors by the thousand. Although the language used is restrictive in form, it really explains and broadens section 2451, and furnishes an easy and practicable test for most cases. The plaintiff Lane was not a contractor, within the meaning of section 2464.

We are of the opinion that, although she performed no manual labor in person, she did through her servants,—and for their services, and for the work done by her teams, is entitled to a lien. Should we hold otherwise, a person who had gone into the woods with a team under an agreement to haul would be deprived of a lien if disabled by an accident, and for that reason compelled to hire a substitute to handle the team. The language found in the statute should be construed as broadly as its common use will warrant, which would include such labor and services when performed by servants and agents, as well as personally, in a common count in assumpsit for work and labor. See Hogan v. Cushing, 49 Wis. 169, 5 N. W. 490, a case in which it was held that a plaintiff could maintain a log lien although the work was performed by his teams and servants. See, also, Perry v. Duluth T. R. Co., 56 Minn. 306, 57 N. W. 792, in which it was held that one who let his teams and teamster to a subcontractor to do work in constructing a railway was entitled to a lien, under G. S. § 6231.

The order in each case is affirmed.