GEORGE H. SAMPSON COMPANY *vs.* COMMONWEALTH & others.
ALBERT A. HERSEY *vs.* SAME.

Suffolk.    March 22, 23, 1909. — May 22, 1909.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & SHELDON, JJ.

*Commonwealth. Equity Jurisdiction,* To enforce bond given under Pub. Sts. c. 16, § 64, or R. L. c. 6, § 77. *Bond. Surety. Lien. Equity Pleading and Practice,* Findings of master· *Interest. Words,* " Completion of the work."

Under the various sections of Pub. Sts. c. 195, and St. 1887, c. 246, one who has furnished labor and materials used in the construction of public works under a contract with the Commonwealth, where the contractor in compliance with the requirement of Pub. Sts. c. 16, § 64, has given a bond to secure the payment by the contractor and by all sub-contractors for all labor performed or furnished and for all materials used in such construction, can obtain an enforcement of the liability of the surety on the bond for the payment of the contractor's debt to him in a suit in equity in which the contractor, the Commonwealth and the surety on the bond are made defendants.

In a suit in equity to obtain the enforcement of a bond given in compliance with the requirement of Pub. Sts. c. 16, § 64, by a contractor who had a contract with the Commonwealth for the construction of a public aqueduct, to secure the payment "for all labor performed or furnished and for all materials used in such construction," gunpowder used in blasting rock to excavate a trench for the aqueduct and to put the rock in condition for use in the construction of the aqueduct comes within the provision of the statute as a material " used in such construction," in payment for which the plaintiff is entitled to have the liability of the surety on the bond enforced.

In a suit in equity to obtain the enforcement of a bond given in compliance with the requirement of R. L. c. 6, § 77, by a contractor who had a contract with

the Commonwealth for the construction of a public sewer, to secure the payment "for labor performed or furnished and for materials used in such construction," piles, furnished and put in position as a part of the completed structure of the sewer and designed for its support, and the labor furnished in putting them in position by means of a pile driver are labor and materials used in the construction of the sewer within the meaning of the statute, for which the plaintiff is entitled to have the liability of the surety on the bond enforced, and the fact that the plaintiff's laborers used the pile driver does not deprive him of his lien for their labor.

In a suit in equity a finding of a master may be found to have been warranted by the evidence, although the evidence is very indefinite and depends largely upon circumstances and inferences that do not approach very near to absolute certainty.

Under the provision of R. L. c. 6, § 77, that "officers or agents who contract in behalf of the Commonwealth for the construction or repair of public buildings or other public works shall obtain sufficient security, by bond or otherwise, for payment by the contractor and sub-contractors for labor performed or furnished and for materials used in such construction or repair ; but in order to obtain the benefit of such security, the claimant shall file with such officers or agents, a sworn statement of his claim, within sixty days after the completion of the work," the "completion of the work" from which the period of sixty days is to be reckoned is the completion of the public work for the construction of which the contract was made, and the section does not require the filing of a statement of each claim for labor or materials within sixty days after the last of such labor or materials is furnished by the claimant.

Under the provision of R. L. c. 6, § 77, that "officers or agents who contract in behalf of the Commonwealth for the construction or repair of public buildings or other public works shall obtain sufficient security, by bond or otherwise, for payment by the contractor and sub-contractors for labor performed or furnished and for materials used in such construction or repair," the materials referred to are those that enter directly into the work and become a part of it, or those that are consumed by being applied directly to substances to be moved or changed to make a place for the structure or to be incorporated into it, and the provision does not extend to a claim for coal burned in engines which were used on the work to furnish power for different purposes.

In a suit in equity to enforce the liability of the surety on a bond given under the requirement of R. L. c. 6, § 77, as security for the payment by a contractor for labor performed or furnished and for materials used in the construction of a public work under a contract with the Commonwealth, it appeared that some of the claimants had accepted notes, payable upon short terms of time, to enable them to raise money for necessary uses, and a master found that these notes were not accepted as payment but were taken for a temporary purpose. There was no evidence of any loss to the surety by these arrangements. The surety contended that it was discharged from its liability for these claims by the giving of time to the debtors. *Held,* that a bond given under the statute is an agreement to make good all deficiencies if the contractor fails to make his payments within a reasonable time, and that under such a contract any reasonable arrangement in regard to payments made by persons not mentioned in the bond should not release the surety unless the arrangement is prejudicial to him ; so that the surety here was not discharged from its liability.

In a suit in equity to enforce the liability of the surety on a bond given under the requirement of R. L. c. 6, § 77, as security for the payment by a contractor for

labor performed or furnished and for materials used in the construction of a public work under a contract with the Commonwealth, the claimants are entitled to interest against the contractor, the principal obligor on the bond, from the time when the debts to them severally became due, and the surety is liable to make good any default of the principal obligor in regard to payments, within the amount stated as the penal sum of the bond. The liability as against the surety becomes fixed as to each claim at the time that the statement of the claim is filed under the requirement of the statute. Interest on the amount stated in the bond should be charged from the date of the filing of the bill, and, where there has been a default before that date, the surety is liable to pay interest on that amount from the commencement of the suit.

Two BILLS IN EQUITY, filed in the Superior Court respectively on March 14, 1904, and April 18, 1907, the first by the George H. Sampson Company, a corporation organized under the laws of the State of Maine, and the second by Alfred A. Hersey of Melrose, both of them against the Commonwealth of Massachusetts and also against the United States Fidelity and Guaranty Company, a corporation organized under the laws of the State of Maryland, in the first case as surety on a bond given under the requirement of Pub. Sts. c. 16, § 64, and in the second case as surety on a bond given under the requirement of R. L. c. 6, § 77, the other defendants in the first case being contractors doing business as copartners under the firm name of Shanahan, Casparis and Company, and the other defendants in the second case being contractors, doing business as copartners under the firm name of T. G. Gill and Company, and also certain claimants, among them the Locke Canal Company, a corporation organized under the laws of the State of Virginia.

In the Superior Court the two cases were heard at different times by the same three judges, *Fessenden, Richardson, & Wait,* JJ. In this first case the defendant United States Fidelity and Guaranty Company demurred to the bill, and the demurrer was overruled by the judges. The case was submitted to them upon an agreed statement of facts, and they ordered that the bill be dismissed. The judges filed the following memorandum :

" The demurrer of the defendant Fidelity and Guaranty Company is overruled. We are unable to say that the gunpowder would ' form a part of the completed structure,' within the language of the case of *Kennedy* v. *Commonwealth*, 182 Mass. 480,

and, upon the authority of that case, the bill must be dismissed. Decree accordingly."

A final decree was entered dismissing the bill, and the plaintiff appealed.

The second case was referred to Winfield S. Slocum, Esquire, as master, "to hear the parties and their evidence, and report his findings to the court, together with such facts, evidence and questions of law as either party may request."

Later the case was heard by the three judges upon the master's report and the exceptions thereto. They made a final decree which ordered, among other things, that the exceptions of the defendants United States Fidelity and Guaranty Company, Locke Coal Company, Daniel McDonald, Malden City Lumber Company, Robert C. Guptill and Alonzo A. West, to the master's report be overruled, that the sum of $2,644.65 retained by the defendant Commonwealth of Massachusetts, and the bond executed to said Commonwealth by the defendants, Thomas H. Gill, John F. Gill and John F. Elkins, as principals, and the defendant United States Fidelity and Guaranty Company, as surety, constitute security under R. L. c. 6, § 77, for the payment for labor performed or furnished and for materials used in the construction of the public work described in the plaintiff's bill; that the plaintiff performed and furnished labor and furnished materials used in the construction of said public work under a contract with the defendants Thomas H. Gill, John F. Gill and John F. Elkins; that the defendants Addie L. Brown, the Locke Coal Company, Timothy O'Brien, Joseph P. O'Connell and George A. Parry, Richard H. Parry and Robert A. Parry, copartners under the name of Parry Brick Company, the Malden City Lumber Company, Benjamin Pope and Edgar W. Cottle, copartners under the firm name of Pope and Cottle, and William H. Wood, severally furnished materials used in the construction of said public work all under contracts with the defendants Thomas H. Gill, John F. Gill and John F. Elkins and that the plaintiff and the defendants Addie L. Brown, the Locke Coal Company, in respect of its claim for cement furnished, Timothy O'Brien, Joseph P. O'Connell and George A. Parry, Richard H. Parry and Robert A. Parry, copartners under the name of Parry Brick Company, the Malden City Lumber Company, Benjamin

Pope and Edgar W. Cottle, copartners under the firm name of Pope and Cottle, and William H. Wood had severally complied with the provisions of the statute above mentioned and were entitled to the benefit of the security for the payment of the sums due them respectively from the defendants Thomas H. Gill, John F. Gill and John F. Elkins for such labor and materials together with interest on said several sums from the respective dates of filing of their respective statements under said statutes; and that the security above stated constituted trust property or a fund which the defendant Commonwealth of Massachusetts held in trust for the benefit of the plaintiff and the defendants above named entitled to the benefit of the security to the extent above set forth; that the several claims of the defendants the Carson Trench Machine Company, J. J. Doyle, D. G. Danahy, Robert C. Guptill, W. S. Kaulback, the Malden Grain Company, Daniel McDonald, Patrick McGovern, Edwin Troland, Alonzo A. West, John D. Welsh and the Locke Coal Company, in respect of its claim for coal furnished, be disallowed; that the sum retained by the defendant Commonwealth was not sufficient to pay the sums due the plaintiff and the defendants aforesaid for labor furnished and materials used in the construction of said public work, that the defendants Thomas H. Gill, John F. Gill and John F. Elkins, principals, and the defendant United States Fidelity and Guaranty Company, as surety, were liable upon said bond, that the defendants Thomas H. Gill, John F. Gill and John F. Elkins were financially irresponsible; and it was further ordered and decreed that the defendant United States Fidelity and Guaranty Company within sixty days after entry of this decree should pay to the Commonwealth $10,047.34, which was the sum necessary to enable the Commonwealth to pay the plaintiff and the defendants aforesaid the sums due them, aggregating $11,264.89 with interest to the date of the decree, and should also pay the Commonwealth interest on said sum of $11,264.89 from the date of the decree; and that thereupon the Commonwealth immediately should distribute the sums then held by it as aforesaid, as further directed in the decree. The defendant United States Fidelity and Guaranty Company and the defendant Locke Coal Company appealed.

*C. H. Waterman,* for the plaintiff in the first case.

*E. A. Whitman, H. W. Barnum & F. E. Bradbury,* for the United States Fidelity and Guaranty Company.

*E. C. Upton,* for the Locke Coal Company, claimant.

*F. L. Norton,* for the plaintiff in the second case.

*D. Malone,* Attorney General, *& F. T. Field,* Assistant Attorney General, for the Commonwealth.

*J. Wiggin,* for the Malden City Lumber Company.

*L. K. Storrs,* for Pope and Cottle, and William H. Wood, submitted a brief.

KNOWLTON, C. J.    The first of these suits is brought against the firm of Shanahan, Casparis and Company, the Commonwealth of Massachusetts and the United States Fidelity and Guaranty Company, to recover for materials furnished to the above mentioned firm in the construction of parts of an aqueduct for the supply of the city of Boston and its suburbs with water, which parts of the aqueduct the firm agreed to build under contracts entered into with the metropolitan water and sewerage board, under the provisions of the St. 1901, c. 168.    The Pub. Sts. c. 16, § 64, which were in force when these contracts were made, required the officers or agents contracting in behalf of the Commonwealth for the construction or repair of public buildings or other public works, upon which liens might attach for labor or materials as against private owners, to "obtain sufficient security, by bond or otherwise, for payment by the contractor and by all sub-contractors for all labor performed or furnished and for all materials used in such construction or repair."    Bonds were given to the Commonwealth by this firm, to secure the proper performance of these contracts and also payment for all labor performed or furnished and for all materials used in the carrying out of the contracts, which several bonds the United States Fidelity and Guaranty Company executed as a surety.    The plaintiff furnished a large amount of gunpowder, which was used in the prosecution of the work, in excavating the rock by blasting for the trench, as required by the contracts.    The greater part of this material so excavated was used in the construction of the aqueduct.    The plaintiff seeks, by this suit, to obtain an enforcement of the liability of the surety on the bonds for the payment of the debt.

The first question is whether a remedy can be given by the court upon such a bond. The decision in *Nash* v. *Commonwealth,* 174 Mass. 335, goes far towards answering this question. See also *Kennedy* v. *Commonwealth,* 182 Mass. 480. *Burr* v. *Massachusetts School for Feeble-Minded,* 197 Mass. 357. The only difference between that case and the present one, in this particular, is that the payment in that case was enforced against the money due from the Commonwealth upon the contract. It was held that the various sections of c. 195 of the Public Statutes, taken in connection with the broad and comprehensive language of the St. 1887, c. 246, subject the Commonwealth to proceedings in its own courts, " for the determination of claims of the character which civilized governments have always recognized," even though satisfaction of them has usually been obtained only by a direct appeal to the sovereign, or, in our form of government, to the Legislature. See *Murdock Parlor Grate Co.* v. *Commonwealth,* 152 Mass. 28, 31. In the same decision it was held that the statute makes the Commonwealth a trustee for persons having claims for labor and materials, and that this trust may be enforced by a court upon the fund due from the Commonwealth under the original contract.

The reasoning on which the decision rests is equally applicable to the enforcement of the security furnished by a bond. By the terms of the statute, this security is for the benefit of those having claims for labor and materials. The statute implies the existence of a right, on the part of these persons, to an enforcement of the bond to obtain payment for their debts. No mode of enforcement is prescribed. The courts are left to take proper action upon the application of those seeking relief. A petition in equity, like that in *Nash* v. *Commonwealth, ubi supra,* in which orders and decrees can be made, protecting the rights of all parties, is a proper proceeding in a case like the present. In many cases of this kind there would be numerous persons entitled to share in the security, some of whom might not be known when the suit was brought, and a proceeding in equity would be the only adequate mode of adjusting the rights of the parties. Statutory rights of beneficiaries, under contracts to which they are not direct parties, have often been recognized and enforced by the courts. *Harris* v. *First Parish in Dor-*

*chester*, 23 Pick. 112, 114. *Stephenson* v. *Monmouth Mining Co.* 54 C. C. A. 499; 84 Fed. Rep. 114. See also *Ward* v. *Lewis*, 4 Pick. 518; *New England Bank* v. *Lewis*, 8 Pick. 113; *Frost* v. *Gage*, 1 Allen, 262; *Andrews* v. *Tuttle-Smith Co.* 191 Mass. 461. *Poland* v. *Beal*, 192 Mass. 559. *Burlew* v. *Hillman*, 1 C. E. Green, 23, 25. The present case differs materially from those in which it is held that, ordinarily, an action at law cannot be maintained in his own name by one who is not a party to a contract given to another person for his benefit. The right to compel the surety upon the bonds to make payment for the benefit of this plaintiff may well be enforced in this suit.

The next question is whether a claim for gunpowder, used in blasting to excavate the trench and to put the rock in condition for use in the construction of the aqueduct, comes within the provisions of the statute. The right to security is given, under the statute, only for labor and materials for which a lien might attach if the building or other public works belonged to private persons. Pub. Sts. c. 16, § 64. R. L. c. 6, § 77. *Kennedy* v. *Commonwealth*, 182 Mass. 480. It has been held, under the law relative to mechanics' liens, that the statute did not cover materials "that did not form a part of the completed structure." *Boston Furnace Co.* v. *Dimock*, 158 Mass. 552. This is undoubtedly true in reference to such materials as were under consideration in these cases. But this court has never had occasion to consider a case like the present, where the material was used directly upon the work or the structure in process of construction, for the purpose of bringing it into proper form or condition, and was entirely consumed in the use. In such a case it may be said that, in a general sense, the material enters into the completed structure. In this broad sense it forms a part of it, as it loses its identity and ceases to exist as a separate substance, in producing a direct effect upon the construction, which effect remains as a part of the result shown in the completed structure. In *Rapauno Chemical Co.* v. *Greenfield & Northern Railroad*, 59 Mo. App. 6, the court used this language: "Hence we think that the argument is unsound, that the lien in the case here must fail because the powder was entirely consumed, and, therefore, could not have been actually incorporated in the

work. Such a construction of the statute we conceive to be a strained one, and not within its equity or spirit. What was said on this subject by the Supreme Court in the case of *Simmons* v. *Carrier*, 60 Mo. 581, must be read in the light of the particular facts of that case. There the claim was for lumber. The court held that a lien could not be maintained for such material, unless it actually entered into the construction of the building. This was undoubtedly the proper construction of the statute as applicable to lumber and such like materials to be used in or on the improvements; but in our opinion it is unreasonable to apply such a test to powder which is entirely consumed in its use." The same thought is expressed in *Hercules Powder Co.* v. *Knoxville, La Follette & Jellico Railroad*, 113 Tenn. 382, as follows: "The fact that the materials were consumed in the use and were thus destroyed in the construction, we think does not deprive the furnisher of his lien. The consumption of explosives is the only use that can be made of them, and their consumption is absolutely necessary to the excavation of tunnels through rock. In other words, they are material which enter into the building and grading of the road as much so as trestles, bridges, and culverts contain materials which are necessary to the grading of the road, at such places as require trestles and bridges and culverts. . . . All of the decisions upon this subject draw a clear distinction between explosives and explosive supplies used in the construction of a railroad company's roadway, and which are necessarily consumed in the use thereof, and machinery and tools furnished for that purpose, which are held to be a part of the contractor's plant, and which do not go into the building of the roadway, but retain their identity and fitness for future use, saving the limited and gradual wear and tear incident to such use."

In an opinion of the Court of Appeals in New York we find these statements: "The argument that dynamite is not a material, but a part of the contractor's plant which, like picks and shovels or mechanical appliances, are used in the performance of work, but are not considered materials furnished, within the purview of the statutes, seems to us inherently unsound. A steam shovel, an engine and boiler, picks, shovels, crowbars and the like, are tools and appliances which, while

used in the doing of the work, survive its performance and remain the property of their owner. Not so, however, with materials that are used up in the performance of the work, and are thereafter invisible except as they survive in tangible results. We think that explosives when used as substitutes for other recognized ' materials,' are covered by the same principle. They enter into and form a part of the permanent structure quite as much as the earth, rails, ties, culverts and bridges that we can see and feel." *Schaghticoke Powder Co.* v. *Greenwich & Johnsonville Railroad,* 183 N. Y. 306. See also for similar doctrine, *Keystone Mining Co.* v. *Gallagher,* 5 Col. 23, 28; *Giant Powder Co.* v. *San Diego Flume Co.* 78 Cal. 193; *Giant-Powder Co.* v. *Oregon Pacific Railroad,* 42 Fed. Rep. 470. See also Phillips on Mechanics' Liens, (3d ed.) § 159; Boisoit on Mechanics' Liens, § 123; 2 Jones on Liens, (2d ed.) § 1623 a; 20 Am. & Eng. Encyc. of Law, (2d ed.) 348; 27 Cyc. 45.

This view of the law is held almost, if not quite, universally. While some of the decisions are under statutes a little broader than ours, we think the general principle upon which they depend is equally applicable to the Pub. Sts. c. 191, § 1. We are of opinion that the plaintiff is entitled to have the liability of the surety enforced for the payment of its debt.

The second case is brought against the firm of T. H. Gill and Company, their trustee in bankruptcy, the Commonwealth of Massachusetts, the United States Fidelity and Guaranty Company, and numerous other defendants who furnished materials to this firm for the construction of a sewer which the firm undertook to build for the Commonwealth, under a contract in writing executed in behalf of the Commonwealth by the metropolitan water and sewerage board. A bond was given to the Commonwealth with similar provisions, and with the same surety as in the other case. Some of the questions that arise are the same in both cases.

What we have already said shows that this kind of remedy is open to those who furnish labor or materials, such as are referred to in the statute. The demurrer of the surety on the bond was rightly overruled.

The greater part of the plaintiff's claim was for spruce piles, furnished and put in position as a part of the completed struc-

ture of the sewer and designed for the support thereof. These were furnished and put in place under a contract, at a round price of eighteen cents per linear foot. The surety objects that they were not materials and labor for which a lien could be enforced, because the men who put them in position used a pile driver. If the contract is to be treated as one for materials only, to be delivered in their place in the ground, there is no room for the question.. If, as is doubtless a better construction, this is deemed to be a contract for labor and materials, it was not necessary to separate the cost of the labor from the cost of the materials, or to give notice to the Commonwealth of a claim of a lien for materials, because the procedure under the lien law is not adopted into this statute. See R. L. c. 197, § 3. The statute applies to all cases where a lien might be acquired if proper proceedings were taken to secure it. We are also of opinion that the use of a pile driver by the plaintiff's men does not deprive him of his lien for their labor. In many kinds of mechanical work on buildings, workmen use not only simple tools, but machines of greater or less complication. The use of tools and machines which wear out in the use does not give a right to a lien for their value as materials. *Kennedy* v. *Commonwealth, ubi supra.* If it be assumed that no lien arises for the value of the use of a machine, apart from the labor of those who use it, we are of opinion that the use of tools and machines, controlled by workmen, rendering their labor upon a building or other structure more effective and valuable than it would be if it were performed with their hands alone, does not defeat a claim for a lien for labor in the operation of such a machine as a pile driver.

The plaintiff and several of the defendants furnished plank for sheathing for the trench of the sewer, which was left in position for the protection and support of the sewer, in accordance with the terms of the contract. While an important part of the purpose of it was to support the walls of the trench and protect the workmen, it also had another use, in reference to which it was retained in position permanently. The master found that this was a part of the permanent structure of the sewer, and he allowed the price of it properly under the statute.

This lumber was furnished by several different parties, and it was so mingled together that it was impossible to tell exactly how much of that furnished by each party was used and finally retained in the trench, and how much was used for other purposes for which no allowance can be made in this suit. The whole amount retained permanently was definitely determined, and there was evidence from which the master found that the proportion furnished for this use, as compared with the whole amount delivered by each, was the same for all the parties. It is contended by the surety that there was no evidence to warrant this finding. It is true that the evidence was very indefinite, depending largely upon circumstances and inferences that do not approach very near to absolute certainty. Without reviewing the evidence, we are of opinion that it warranted the finding, and that the exception to this part of the master's report was rightly overruled.

In order to have the benefit of the R. L. c. 6, § 77, a claimant is obliged to file, with the officers or agents of the Commonwealth, " a sworn statement of his claim, within sixty days after the completion of the work." The only work previously re-ferred to is the " construction or repair of public buildings or other public works." It is contended by the surety that this section requires the filing of each claim for labor or materials within sixty days after the last of such labor or materials is furnished by the claimant. There is no reference in the section to the time of ceasing to furnish materials, as a point from which the sixty days are to be reckoned for any claimant. The point of departure from which to ascertain the period of sixty days is " the completion of the work." We think this means the completion of the public work, for the construction of which the contract was made. Otherwise, the rights of claimants for the price of materials, if they had done no work, would be left indefinite. The language is very different from that of R. L. c. 197, § 6, which requires the claimant to file his statement " within thirty days after he ceased to labor on or to furnish labor or materials for the building or structure."

The defendant, the Locke Coal Company, appealed from the disallowance of its claim for coal, burned in engines which were used on the work to furnish power for different purposes. We

are of opinion that there is a plain distinction between materials so used, and materials that enter directly into the work and become a part of it, or those that are consumed by being applied directly to substances to be moved or changed to make a place for the structure, or be incorporated into it. Under statutes like that of Massachusetts, liens for coal so used have generally been denied. *Philadelphia* v. *Malone*, 214 Penn. St. 90. *United States* v. *City Trust*, 23 App. D. C. 153. In the former of these cases the court said: " To hold with the plaintiff in this case is to require us to extend the bond to cover practically everything purchased by every sub-contractor on the work. If coal can be recovered for, then of course oil, waste, repairs or tools used in running the derrick and locomotive, or about the cars or repairing them, would have to be recovered for, and, going a step further, light furnished if the work was prosecuted at night. If coal for an engine can be recovered for, why not feed for horses, a farrier's bill or the bill of a veterinary ? " We are of opinion that this claim was rightly disallowed. See *Kennedy* v. *Commonwealth*, 182 Mass. 480.

Some of the defendants having claims accepted notes, payable upon short terms of time, to enable them to raise money for necessary uses, each of which notes the master has found was not accepted as a payment, but taken for a temporary purpose. The surety contends that it was discharged from its liability for these claims by the giving of time to the debtors. There was no evidence of any loss occasioned to the surety by these arrangements, and the question is whether, apart from loss or detriment, the surety was thereby released from liability for payment of these debts. It is to be noticed that the bond is not to pay a stated debt to a particular person at a fixed time. It is to perform the contract, and pay for all materials used in carrying out the contract. This relates to making payments within a reasonable time and in a reasonable way. It does not take from the claimant his right to make reasonable arrangements with the contractor for his payments, even to a reasonable extension of time for a part of his debt, if thereby the surety is not prejudiced. These claims are in favor of persons and for amounts unknown at the time of the signing of the bond. They are unlike a specified payment

to a particular person, to be made at a stated time, which the surety may be expected to desire to pay promptly, in order that he may seek his remedy against his principal if the principal fails to pay at the time stated. The agreement is to make good all deficiencies, if the contractor fails to finish the business properly and make his payments within a reasonable time. Upon such a contract, any reasonable arrangement in regard to payments, by these persons who are not mentioned in the bond, should not release the surety, unless the arrangement is prejudicial to him. This case comes within the decision and the reasons stated in *Guaranty Co.* v. *Pressed Brick Co.* 191 U. S. 416, and the ruling of the judges of the Superior Court was correct.

The rulings as to interest were also right. The several claimants were entitled to interest as against the contractor, the principal in the bond, from the time when the debts to them severally became due. The liability of the surety was to make good any default of the principal in regard to payments, within the amount stated as the penal sum of the bond. *Warner* v. *Thurlo*, 15 Mass. 154. *Bassett* v. *Fidelity & Deposit Co.* 184 Mass. 210. This statutory liability became fixed on each claim, as against the surety, at the time of filing the statements of the respective claims. Interest on the amount stated in the bond could rightly be charged, as it was charged, from the date of the filing of the bill. As there was a default before that date, the defendant is liable to pay interest on this amount from the commencement of the suit. *Bank of Brighton* v. *Smith*, 12 Allen, 243.

> *Decree in the first case reversed ; decree in the second case affirmed.*