## In re CRAIG LUMBER CO.

(First Disvision. Juneau. May 9, 1921.)

No. 2057–A.

**1. Corporations ⬡⇒657(3)—Foreign—Contracts.**

The Alaska statute relating to foreign corporations doing business in Alaska does not make void the contracts of corporations which do business without complying with the statutory requirements, except such contracts as are made with citizens of Alaska. The contracts of a noncomplying corporation with others than citizens of Alaska is voidable at the election of the other party.

**2. Corporations ⬡⇒657(3)—Foreign—Contracts.**

Two foreign corporations may do business with each other within the district of Alaska without filing any articles appointing any agent, or taking any other steps, and, just so long as they deal with each other only, their contracts are voidable, not void. In such case they would incur the danger of the Attorney, General bringing a suit to recover $25 per day for every day either of them shall so neglect to file the papers required by statute. It is only where a foreign corporation which has failed to comply with the statuory requirements deals with a citizen of Alaska that the contracts are void, and the court is enjoined not to enforce the same in favor of the corporation.

**3. Bankruptcy ⬡⇒254—Contract.**

A contract made by a foreign corporation which has not complied with the statute permitting it to engage in business in Alaska is voidable at the election of the other party thereto. Where the other party has elected to stand by the contract, but afterwards becomes a bankrupt, the trustee in bankruptcy has no power to avoid the contract. The party, having already made an election, is bound by the same, and so is the trustee.

**4. Logs and Logging ⬡⇒27(4)—Liens—Bankruptcy.**

A contractor cut and rafted logs for a mill company which went into bankruptcy. The contractor claimed a preferred lien on the logs. *Held*, a contractor has no right of lien on logs so cut and rafted in Alaska.

The McDonald-Weist Logging Company is a corporation organized under the laws of the state of Washington. It made an abortive effort to comply with the laws of the territory of Alaska requiring corporations to file certain papers before doing business in the said territory. The Craig Lumber Company was also a foreign corporation, and duly complied with

⬡⇒See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the requirements of the laws of said territory concerning the doing of business within the said territory.

On the 2d day of January, 1918, these corporations entered into a contract whereby the former was to cut logs for the latter. The logs to be cut belonged to the government. The McDonald-Weist Company was to cut and raft the logs. The Craig Lumber Company was to pay the government stumpage, and to do all the work of towing the logs to their mill situated at Craig.

Under this contract the McDonald-Weist Company cut and rafted 3,779,426 feet of logs on the dates hereinafter mentioned and of the money value set opposite the respective dates, to wit:

1918

| | |
|---|---:|
| June 1st | $6,067.80 |
| July 6th | 3,020.00 |
| July 31st | 4,200.10 |
| August 1st | 5,784.30 |
| September 30th | 2,978.70 |
| October 10th | 8,890.80 |
| November 22d | 6,852.56 |
| Total value | $37,794.26 |

On December 20, 1918, the Craig Lumber Company directed the McDonald-Weist Company to discontinue cutting logs under the aforementioned contract. At that time the McDonald-Weist Company had in the woods 300,000 feet of logs already cut, but not rafted, under the contract. The Craig Lumber Company made certain payments from time to time, and on the said 20th of December, 1918, its total payments had amounted to the sum of $10,544.57. Since said date it has made no payments.

On the 19th day of March, 1920, the Craig Lumber Company was adjudged to be a bankrupt. A trustee was duly elected on May 28, 1919. The McDonald-Weist Company duly filed with the trustee a claim for $27,871.50, alleging that amount to be due under said contract, maintaining that it has a preferred claim for that amount on the proceeds of the sale of logs and the lumber manufactured therefrom (said proceeds now being in the hands of the trustee), by reason of a lien notice which it had theretofore filed.

The trustee objected to the claim upon two grounds: First

that, as the McDonald-Weist Company had not complied with the requirements of the statute, it was not authorized to do business in Alaska, and any contract made by it was void and could not be enforced in the bankruptcy court; second, that even if it had power to enforce its claim in the bankruptcy court, still its lien had no standing in court on account of the fact, as alleged, that the statute gives a lien only to persons performing labor upon logs, and not to contractors cutting logs.

The referee decided: First, that the fact that claimant was a foreign corporation which had not complied with said statute did not preclude it from asserting its lien or filing its claim in bankruptcy; second, that the statute of Alaska gives a lien only to laborers, and not to contractors, and that, as the claimant was a contractor, and not a laborer, it follows as a matter of law that the said claimant had no lien. The referee allowed the claim, but refused to make it a preferred claim.

Both sides appealed from the decision of the referee.

The matters certified to the court are as follows: Did the referee commit error in holding (1) that the McDonald-Weist Company had standing in court to prosecute this claim; (2) that the said company did not have a preferred claim?

J. H. Cobb, of Juneau, for petitioner.
Roden & Dawes, of Juneau, for respondent.

JENNINGS, District Judge. As to the first question, the trustee calls the attention of the court to section 660 of the Compiled Laws of Alaska 1913, which provides that:

"If any such corporation or company shall fail to comply with any of the provisions of this chapter [chapter 23], all its contracts with citizens of the district shall be void as to the corporation or company, and no court of the district, or of the United States, shall enforce the same in favor of the corporation or company so failing."

It is difficult, however, to see how this section at all affects the matter in controversy for the reason that the Craig Lumber Company is not a citizen of the district. It is itself a foreign corporation, and therefore a provision of law that no court shall enforce the same (meaning thereby contracts with citizens of the district) does not apply.

Our statute relating to foreign corporations doing business in the district of Alaska does not make void the contracts of

corporations which do business without complying with the statutory requirements, except such contracts as are made with citizens of Alaska. The contracts of a noncomplying corporation with others than citizens of Alaska is voidable at the election of the other party. The statute also prescribes a penalty for noncomplying corporations doing business, to wit, they shall forfeit the sum of $25 per day. (See section 657.)

The effect of such a provision is not to make contracts void. 5 Thompson on Corporations, § 6708.

Two foreign corporations may do business with each other within the district of Alaska without filing any articles, appointing any agents, or taking any other steps, and just so long as they deal with each other only their contracts are voidable, not void. In such case they would incur the danger of the Attorney General bringing a suit to recover $25 per day for every day either of them shall so neglect to file the papers required by the statute. It is only when a foreign corporation which has failed to comply with the statutory requirements deals with a citizen of the district that the contracts are void, and the court is enjoined not to enforce the same in favor of the corporation or company which so fails.

"Voidable at the election of the other party thereto" means, in this case, "voidable at the election of the Craig Lumber Company." The question therefore is: Has the Craig Lumber Company ever elected to avoid the contract in question? It is apparent, I think, that so far from electing to avoid the contract in question, the Craig Lumber Company has emphatically elected to stand by the contract. It has received benefits from the contract and has paid more than $10,000 in various sums on account from time to time, but now, after the contract has been in force for more than 12 months, the trustee, who was only appointed on May 28, 1919, assumes to make an election. I do not think he has the power to do so. The Craig Lumber Company, itself already having made an election, is bound by the same. It can make but one election; it cannot elect to accept the logs and pay for part of them, and not pay for the remainder. If the bankrupt could not make a further election, how can the trustee?

As to the first point, therefore, the decision of the referee is upheld.

As to the second point, to wit, whether or not the claim of the McDonald-Weist Company should be considered as a preferred claim: Our logger's lien statute is in derogation of the common law, and must be strictly construed in so far as it attempts to create a lien in favor of persons not in possession of the personal property upon which labor is performed. It is true that, being a remedial statute, it must be liberally construed so far as to affect the purpose and intent of the Legislature. The purpose and intent of the Legislature must be gathered from the terms of the act, and it seems to me that the provision creating liens upon logs was intended to benefit persons who performed labor upon logs. I cannot see anything in the statute which even squints at the idea that contractors who perform no manual labor on or about the logs shall have a lien therefor. The lien is given to the person who does the work so that the fruits of his labor may not be lost by a sale by the party for whom the labor is done. Under said statute any employee of the McDonald-Weist Company would have a lien upon the logs, if his claim was duly filed, but how the McDonald-Weist Logging Company would have a lien upon the logs is not apparent, for it has performed no labor, although some of its stockholders may have done so.

I am cited to the following cases:

Klondike Lumber Co. v. Williams Bros., 71 Ark. 334, 75 S. W. 854, but it seems that that case is an authority against the party who cites it, for the court there says:

"As to contractors, we have several times held that a contractor is not a laborer within the meaning of the statute giving persons liens who performed work and labor, the statute being intended to protect the actual laborer, and does not apply to contractors, or those who only superintended the labor of others."

It is true that the court in that case said that the Williams Bros., the contractors, would have a lien for the work actually performed by them, but it also said that, "as the evidence does not show the value of this work, we are unable to enter a final decree here."

Allen v. Roper, 75 Ark. 104, 86 S. W. 836, does not touch the question here under consideration.

Martin v. Wakefield, 42 Minn. 176, 43 N. W. 966, 6 L. R. A. 362, simply holds that manual labor includes the use of the implements or instrumentalities actually used in and neces-

sary to the performance of such labor, such, for instance, as a team, the court saying:

"A man and his team are employed on the work at a gross price for both; the fact that the employer may have them work separately the whole or a part of the time can make no difference."

Breault v. Archambault, 64 Minn. 420, 67 N. W. 348, 58 Am. St. Rep. 545, simply holds that a blacksmith employed at the camp in shoeing horses and repairing sleds and in mending and keeping in order the tools used by the men actually engaged in the common enterprise is also entitled to a lien.

Carver v. Bagley, 79 Minn. 114, 81 N. W. 757, is in favor of the claimant, but the decision is a mere ipse dixit. No authorities of any kind are cited, the statute is not given, and as an authority the case is not of a very compelling character.

To the contrary see 17 R. C. L. § 43.

In the cases of Day v. Green, 63 Or. 293, 127 Pac. 772, and of Shultz v. Shively, 72 Or. 450, 143 Pac. 1115, cited in support of the lien, the point in question here was not suggested.

The decision of the referee on this point is also upheld.

---

⬤⟲See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes