MULLER, Respondent, vs. S. J. GROVES & SONS COMPANY, imp., Appellant.

*October 16, 1930—January 13, 1931.*

204

For the appellant there were briefs by *Lees & Bunge* of La Crosse, and oral argument by *George W. Bunge*.

*C. W. Graves* of Viroqua, for the respondent.

The following opinion was filed November 11, 1930:

OWEN, J. The appellant, S. J. Groves & Sons Company, had a contract with the state of Wisconsin and Vernon county to improve 14.5 miles of state highway No. 33 by covering it with crushed rock. It sublet seven miles of said work to the defendants Wohlust, Geddes & Tischendorf, hereinafter called the subcontractors. The prosecution of the work contemplated the crushing of native rock and placing the same on the highway. The subcontractors, as a part of their equipment, had a rock crusher but no power with which to operate it. They contracted with the plaintiff to furnish them a portable steam engine, with the necessary labor to run it, for $1.50 an hour while operating one

crusher and $3 an hour while operating two crushers. For this compensation he furnished his engine, trucks, water-hauling machinery, belts, and other equipment, all oil and supplies, exclusive of coal, and all labor necessary to operate his engine and equipment. The subcontractors defaulted in the completion of their contract, owing plaintiff a portion of his agreed compensation. This action is brought against the subcontractors and the principal contractor under the provisions of secs. 289.53 and 289.16, Stats., to subject to the payment of the claim the amount due from the state to the principal contractor, and for a personal judgment against the principal and subcontractor.

The principal question presented is whether the claim is a lienable one, as it is settled by the decisions of this court that the purpose of the statutory provisions mentioned was to accord those rendering services, or furnishing materials entering into public work, the same rights as the mechanics' lien statute gives to those rendering services and furnishing materials upon works of private construction. *Southern Surety Co. v. Metropolitan S. Comm.* 187 Wis. 206, 201 N. W. 980, 204 N. W. 476; *Southern Surety Co. v. Hotchkiss,* 187 Wis. 227, 201 N. W. 986. While it is urged that the language of sec. 289.53 evidences a broader purpose, that very contention received the most deliberate consideration of this court in *Southern Surety Co. v. Metropolitan S. Comm.* 187 Wis. 206, 201 N. W. 980, 204 N. W. 476, with the conclusion that its scope and purpose were coextensive with that of the mechanics' lien law, and that it afforded no greater rights to those furnishing labor and materials for public works than to those furnishing the same things for works of private construction under the mechanics' lien law.

The claim of plaintiff arose under an entire contract—a contract by which he furnished his steam engine and incidental equipment, with the labor necessary to operate it, for

$1.50 an hour while operating one crusher and $3 an hour while operating two crushers. It is universally held that no mechanic's lien arises from the renting of machinery to the contractor in order to enable him to prosecute his work. *Gilbert Hunt Co. v. Parry,* 59 Wash. 646, 110 Pac. 541, 23 Am. & Eng. Ann. Cas. 225, and note. This rule has been expressly approved in this state. *McAuliffe v. Jorgenson,* 107 Wis. 132, 82 N. W. 706; *Lohman v. Peterson,* 87 Wis. 227, 58 N. W. 407. The reason for the rule may be stated to be, that a mechanic's lien is given only for labor and materials which are actually incorporated into the building, and that a machine, such as the steam engine here under consideration, constitutes neither labor nor material entering into the construction but is a part of the plant of the contractor. We proceed, therefore, with a consideration of the case upon the assumption that the plaintiff would not be entitled to the remedy he seeks for the rental value of the steam engine alone. Does the mere fact that he furnished the personal services necessary for the operation of the engine bring within the protection of the mechanics' lien law that part of his claim which arises from the use of the engine itself?

It seems to be sanctioned, upon both reason and authority, that where tools, appliances, or instrumentalities are essential to render human labor efficient, the mechanics' lien laws cover the value of the use of such tools and appliances as may have been furnished and used by the claimant in the performance of the labor for which a lien is claimed. This principle is illustrated and fortified in *Martin v. Wakefield,* 42 Minn. 176, 43 N. W. 966, where the claim for lien arose in the prosecution of logging operations. The court said:

"In almost every department of the work of logging, certain tools, appliances, or instrumentalities are indispensably necessary to the performance of the labor. The timber cannot be cut without axes, or hauled or 'banked' without teams.

Remedial statutes are to be liberally construed to advance the remedy. The legislature could not have intended to exclude the use of those appliances or instrumentalities which are absolutely necessary to the performance of the various departments of labor enumerated in the statute. We are therefore of opinion that 'manual labor,' as used in this connection, includes the use and earnings of all implements, instrumentalities, or agencies, such as axe, cant-hook, team, or the like, which are actually used in and necessary to the performance of such labor by the lumberman or logger."

This would seem to be the holding in *Hogan v. Cushing,* 49 Wis. 169, 5 N. W. 490. It was specifically approved in *Klondike Lumber Co. v. Williams,* 71 Ark. 334, 75 S. W. 854. It was repudiated, however, in *Allen v. Elwert,* 29 Oreg. 428, 44 Pac. 823, 48 Pac. 54. But in such cases the lien for the value of the use of the team was made to depend upon the fact that the team was driven by the owner or his servants, and constituted an instrumentality necessary to make the manual labor effective. This doctrine meets with our approval so far as it is confined to tools, implements, and instrumentalities promoting the effectiveness of manual labor which cannot be performed with any degree of efficiency except by the use of such implements or instrumentalities. It plainly applies to the use of such instruments as axes and cant-hooks, but whether it in reason includes the use of a team in the absence of a statute giving a lien for services performed by beasts of burden, as our statute now does, is not entirely clear. In our modern conception of things, certain work is plainly that of man, even though in the performance of that work he must make use of certain tools and implements. There is other work, however, which is not regarded as man's work—work which in popular conception calls for the services of beasts of burden or the operation of powerful machinery. In the accomplishment of such work the manual service is confined to the driving

of the team or the operation of the machine. Our thought along this line will more plainly appear as we proceed.

In reliance upon the principle which we think was best stated by Mr. Justice MITCHELL in *Martin v. Wakefield,* 42 Minn. 176, 43 N. W. 966, courts have shown a tendency to extend that principle to every kind of a machine, such tendency being indicated sometimes by purely *obiter* expressions, as in *McAuliffe v. Jorgenson,* 107 Wis. 132, 82 N. W. 706; *Potter Mfg. Co. v. Meyer,* 171 Ind. 513, 86 N. E. 837; *Wood, Curtis & Co. v. El Dorado Lumber Co.* 153 Cal. 230, 94 Pac. 877, 16 L. R. A. N. S. 585, and sometimes by express holding, as in *George H. Sampson Co. v. Comm.* 202 Mass. 326, 88 N. E. 911, and *Ellis-Mylroie Lumber Co. v. Bratt,* 119 Wash. 142, 205 Pac. 398.

In *George H. Sampson Co. v. Comm.* 202 Mass. 326, 336, 88 N. E. 911, a claim in the nature of a mechanic's lien was made for placing piles in position in a sewer construction. The piles were driven by the use of a pile-driver. It was claimed that no lien resulted under the Massachusetts statute for the use of the pile-driver. It was said in the opinion that the use of the pile-driver did not deprive claimant of his lien for the labor of his men. That of course is evident. But the question was whether the labor of the men included also the use of the pile-driver, and the court said: "We are of opinion that the use of tools and machines, controlled by workmen, rendering their labor upon a building or other structure more effective and valuable than it would be if it were performed with their hands alone, does not defeat a claim for a lien for labor in the operation of such a machine as a pile-driver." The court there regarded the pile-driver as something that merely rendered the services of the men more efficient. It is well known that human labor cannot drive piles—at least in these times the driving of piles is not attempted in any such manner.

The driving of piles requires the use of a pile-driver. The driving of piles is the work of the machine. It is not the work of the men who run the machine. The value of the human labor is not to be estimated by the result accomplished by the pile-driver. The result of the manual labor ends when the pile-driver is put in motion. Where work is accomplished through the use of a pile-driver or other similar machine, we see no justification for the conclusion that the aggregate of such work represents manual labor. While those operating the pile-driver render labor and services in and about the construction of the works, the value of their manual labor cannot properly be augmented by the work accomplished by the pile-driver. If it be conceded that the statute accords no lien for the use of the pile-driver itself when no operator is furnished to run it, it requires a rather liberal construction to say that the owner has a lien for its use when and because he operates it. In fact, such a construction gives a lien where the statute denies it.

Important construction operations commonly involve labor, materials, and machinery. The statute expressly gives a lien for labor and materials entering into the construction. It is silent on the subject of machinery used for the purposes of construction. In this age, a contractor commonly owns the machinery necessary for the line of construction in which he is engaged. That is a part of his plant. Its use is figured in and constitutes a part of his contract price. While the statute contemplates that in his construction operations he will be obliged to hire men and purchase materials entering into the construction, and specifically provides that such claims shall be secured by a lien upon the construction, it evidently does not contemplate that he will have to rent machinery necessary to prosecute the construction, and leaves the owner free to pay the contract price when he is assured that all claims for materials and labor have been paid. These

considerations lead us to the conclusion that in this case the claimant, the plaintiff, has no lien for the use of his engine, even though it was operated by himself or by his employees.

We now reach the question of whether, under all the circumstances, plaintiff has a lien for the amount of the manual labor furnished by himself and employees.

The contract relied upon was an entire contract. It did not fix the amount that should be paid to the plaintiff for the manual services he rendered. In *Rinzel v. Stumpf,* 116 Wis. 287, 93 N. W. 36, a lien was denied where lienable and non-lienable items had been supplied for the furnishing of a building under a contract for a lump sum. In that case a number of authorities are cited and reviewed, holding that where lienable and non-lienable items are merged and combined so that the court cannot from the statement of the claim separate the lienable from the non-lienable items, the benefit of the lien is lost as to all. In the closing paragraph of the opinion by Mr. Justice Bardeen it is said: "The contract is an entire one for a fixed sum and cannot be separated or apportioned so as to sustain a lien even if a new trial were had." Although it is stated in *Wiedenbeck-Dobelin Co. v. Mahoney,* 160 Wis. 641, 152 N. W. 479, that the result in that case was due to the fact that the bill of exceptions contained no evidence enabling the court to fix the price of the lienable articles, it is clear that the decision was not based on such circumstance, because it is said that the claim could not be separated or apportioned so as to sustain a lien even if a new trial were had.

While there are considerations more or less persuasive which would seem to justify the granting of a lien for the amount of the reasonable value of plaintiff's personal services, to do so would be in direct contravention of the holding in *Rinzel v. Stumpf,* 116 Wis. 287, 93 N. W. 36, and would require an overruling of that case. The doctrine of that case has been the law of this state for more than

a quarter of a century. It has much reason to support it. We have been cited to no authority with which it is in conflict. We do not think it should be disturbed.

*By the Court.*—The judgment is reversed as to the defendant S. J. Groves & Sons Company and in so far as it gives to plaintiff a lien upon the moneys due from the state of Wisconsin to S. J. Groves & Sons Company, and the cause is remanded with instructions to dismiss the complaint as to S. J. Groves & Sons Company.

A motion for a rehearing was denied, with $25 costs, on January 13, 1931.