## BOSTON FURNACE COMPANY *vs.* JOSEPH C. DIMOCK & others.

Suffolk.   December 2, 1892. — April 3, 1893.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Mechanic's Lien — Evidence — Materials furnished.*

A mechanic's lien cannot be maintained if there is no evidence that portable ranges for which the lien is claimed " were to be furnished as parts of the several houses in which they were put," or were " applied so as to constitute parts of the buildings," within the meaning of *Turner* v. *Wentworth*, 119 Mass. 459, 465. KNOWLTON & LATHROP, JJ. dissented, on the ground that there was evidence for the jury. HOLMES & BARKER, JJ. thought that the test of what are materials used in the erection of a building, within the meaning of the Pub. Sts. c. 191, § 1, is structural connection with the building, and so agreed with the majority.

PETITION, under the Pub. Sts. c. 191, to enforce a mechanic's lien against Joseph C. Dimock, the Boston Five Cents Savings Bank, Estelle M. and Andrew A. Meyer, George L. Wentworth, and John A. Noonan, for labor and materials furnished in the erection of certain buildings. The respondent Dimock was

the owner, and the respondent Savings Bank and Estelle M. and Andrew A. Meyer were mortgagees of the property on which the lien was claimed. The respondents Wentworth and Noonan were the assignees in insolvency of Dimock, under an assignment made after the certificate of lien was filed in the registry of deeds. Issues for a jury were framed. Trial in the Superior Court, before *Hopkins*, J., who allowed a bill of exceptions, in substance as follows.

The land described in the petition was owned by Dimock from January, 1890, until after the date on which the certificate of lien was filed. It was mortgaged by Dimock to the respondent mortgagees on July 19, 1890. The petitioner ceased to furnish labor and materials on November 14, 1890, and within thirty days thereafter, on December 8, 1890, filed its certificate of lien in due form.

The first of the several issues framed for the jury was as follows: "Did the plaintiff furnish labor and materials as alleged, or any part thereof, which were used in the erection of buildings on the premises described in the petition, and were such labor and materials of such character and furnished under such a contract that a lien may be maintained therefor?" The other issues turned out to be immaterial. The petitioner introduced evidence tending to show the following facts. In 1890 the respondent Dimock was engaged in building, on the property referred to, a block of apartment houses, and on April 21, 1890, when about two stories of the houses were completed, he entered into an oral contract with the petitioner, through its agent, one Becket, by which the petitioner agreed to furnish sixteen No. 7 hot closet cyclone ranges, with hot-water fronts, together with zinc, pipes, and couplings, the ranges to be set up in the buildings by the petitioner in such a manner that nothing would remain to be done except for the plumber to make the connections between them and the hot-water boilers. The ranges referred to in the contract were known in the trade as portable cooking ranges with hot-water fronts, and were intended to be set on the zinc which was to be laid upon the floor. Each range was to be connected with the chimney by a pipe or funnel, and the hot-water front of each range was to be coupled by a plumber to the hot-water boiler. The hot-water

boiler was to be connected with the pipes which supplied the buildings with water, and from it the hot water heated by the range was to be carried to the sink, bath-tub, and washbowls. Each suite was to be fitted in this manner. Some time in October, 1890, the respondent Dimock, having so far completed the apartment houses that he was ready to have the ranges put in, requested the petitioner to deliver them. This the petitioner did, and set them up as agreed. The last lot left the petitioner's rooms on November 11, 1890, and were set up by the petitioner within a day or two afterwards. A plumber, who was a stranger to the petitioner, subsequently made the couplings between the range and the hot-water pipes and the tank in each suite, as had been intended.

The foregoing was all the material evidence introduced by the petitioner. At the close of the petitioner's evidence, the judge ruled, as requested by the respondent mortgagee, that there was no evidence that labor had been performed or material had been furnished by the petitioner in the erection of a building, within the meaning of the Pub. Sts. c. 191, and directed the jury to answer the first issue in the negative. The petitioner alleged exceptions.

The case was argued at the bar in December, 1892, and afterwards was submitted on the briefs to all the judges.

*H. G. Allen & W. R. Howland,* for the petitioner.

*W. M. Stockbridge,* for the respondents Estelle M. and Andrew A. Meyer.

HOLMES, J. In the opinion of a majority of the court, there was no evidence that the portable ranges for which the lien is claimed " were to be furnished as parts of the several houses in which they were put," or were " applied so as to constitute parts of the buildings," within the meaning of *Turner* v. *Wentworth,* 119 Mass. 459, 465. See *Dimmick* v. *Cook,* 115 Penn. St. 573; *Schaper* v. *Bibb,* 71 Md. 145. In the opinion of Mr. Justice Knowlton and of Mr. Justice Lathrop there was evidence, and the case should have been sent to a jury. I concur in that opinion, if the question what would pass as between vendor and purchaser be the test of what are " materials . . . used in the erection . . . of a building." Pub. Sts. c. 191, § 1. Mr. Justice Barker and myself, however, are disposed to think that the

words of the act are to be taken in a less artificial sense, and that the true test is structural connection with the building, which would lead us to the same result as the majority.

*Exceptions overruled.*