Barker & Stewart Lumber Company and another, Respondents, vs. Marathon Paper Mills Company, Appellant.

*February 24—April 5, 1911.*

*Mechanics' liens: Construction of statute: Subcontractors: Materials furnished "for or in or about" structure: Physical incorporation: Tools and equipment: Timbers, etc., used for cofferdam: Freight advanced.*

1. Mechanic's lien statutes are remedial in their character and are to be liberally construed to effectuate their purpose.
2. Actual physical incorporation of the materials into the structure is not in all cases essential to the lien of a subcontractor furnishing such materials. *Francis & N. F. Co. v. King Knob C. Co.* 142 Wis. 619, and other cases, limited.
3. If materials furnished by a subcontractor become merely an appliance or a part of the principal contractor's equipment, to be used in constructing the building, there is no lien therefor.
4. Appliances within the meaning of the above rule are, generally speaking, things which are expected to be used again and again. They are in effect tools and, though perhaps appreciably diminishing in usefulness with each use, cannot be said to be materials furnished "for or in or about" the erection of any given structure, within the meaning of sec. 3315, Stats. (1898).
5. Where the materials are used directly upon the work or structure itself, are instrumental in producing the final result, and are actually consumed in the use, they may properly be said to have entered into and to form a part of the completed structure, although not physically incorporated therein.
6. Thus, where lumber, piling timbers, and hardware were used in the construction of a cofferdam, the purpose of which was to hold back the water during the building of a permanent dam, and their life and substance were consumed in the use to such an extent that they lost their identity and fitness as materials, although they retained some slight value as junk or firewood, and a limited portion could even be used in building another cofferdam, they were furnished "for or in or about" the permanent dam, and the subcontractors furnishing such materials are entitled to a lien on such permanent dam.
7. The materials so used in the cofferdam cannot be regarded as tools, machinery, or equipment of the principal contractor to whom they were furnished.

8. The doctrine applied in this case should be carefully guarded and not carried to extreme or fanciful lengths so as to give a lien for materials which have had neither physical contact nor immediate connection with the structure at any time.

[9. Whether materials used in the construction of scaffolding are lienable or not, discussed but not decided.]

10. Freight advanced by a subcontractor, as a convenience to the principal contractor, upon materials sold and shipped to the latter, may properly be allowed as part of the delivered purchase price, although it was not agreed in advance that the freight should be so paid and included.

APPEAL from a judgment of the circuit court for Marathon county: A. H. REID, Circuit Judge. *Affirmed.*

This is a mechanic's lien action brought by materialmen to enforce liens upon the defendants' concrete dam in the Wisconsin river, for materials consisting of lumber, timber, and hardware sold by them to one Painter, the principal contractor, and which the plaintiffs claim were furnished for, in, and about the erection and construction of the dam within the meaning of the mechanic's lien statute.

The facts were not substantially in dispute. On May 3, 1909, one George M. Painter contracted with the defendant company to build the dam in question and to furnish all materials, tools, labor, appliances, and appurtenances necessary for the doing of the work, including the clearing of the site, excavation, pumping, cofferdams, etc., necessary to keep the site of the foundations dry, etc. Painter carried the work on for several months, but abandoned it without excuse in October, 1909, at a time when nothing was due him. He had at that time constructed a large and expensive cofferdam surrounding the site of the permanent dam and had commenced the construction of the latter. The cofferdam was constructed by driving two parallel rows of piling in the bed of the river and bolting on the inner sides of these piles sections of planking nine inches in thickness and twenty-four inches wide; each such section being formed by bolting to-

gether three three-inch hardwood planks, the center plank being set in about half the width of the planks so as to make a tongue and groove formation, the space between the walls thus made being filled with sand and gravel. The plaintiff *Barker & Stewart Lumber Company* furnished Painter the following materials used in building the cofferdam, viz.:

Three-inch planks, at $16 per M. feet..................... $4,602.57
Unsawed piling timbers................................      935.30
15,000 feet one-inch hemlock...........................      112.50

    Making a total of................................. $5,650.37

The same plaintiff also furnished a quantity of hemlock lumber which was used in making forms for the concrete work in the flumes of the permanent dam, amounting to $397.73, making a total of material for which they claim a lien of $6,048.10. The plaintiff *Marshall-Wells Hardware Company* furnished Painter soft steel, bolts, nuts, and washers which were used in the construction of the cofferdam to the amount of $715.49, and advanced and paid the freight on said materials from Duluth to the amount of $72.81, making in the aggregate $788.30. When Painter abandoned the contract the defendant took possession of the site and completed the work, using for that purpose the material which Painter left upon the ground, including the material in the cofferdam, as it was authorized by the contract to do in that event. As to the lumber and timber which went into the dam the court found as follows:

"The piling material has all of it been substantially destroyed by such use. A major portion of the planks were afterwards removed in sections and when so removed could have been used in the construction of some other similar cofferdam, and the lumber had at the time of removal a market value of from four to five dollars per thousand feet. It has since removal been used by the *Marathon Paper Mills Company* for tramways and planking in the carrying out of said contract, and at the completion of such use has no other value than for firewood."

Upon these facts the trial court found that the materials furnished by both plaintiffs were furnished for, in, and about the construction and erection of the dam and entered judgment of foreclosure of mechanics' liens therefor, and the defendant appeals.

For the appellant there were briefs by *Brown, Pradt & Genrich,* and oral argument by *L. A. Pradt* and *F. W. Genrich.* They cited, among other authorities, *First Nat. Bank v. Perris Irr. Dist.* 107 Cal. 55, 40 Pac. 45; *Stimson M. Co. v. Los Angeles T. Co.* 141 Cal. 30, 74 Pac. 357; *U. S. v. City T., S. D. & S. Co.* 30 Wash. Law Rep. (D. C.) 778; *Philadelphia v. Malone,* 214 Pa. St. 90, 63 Atl. 539, 541; *Oppenheimer v. Morrell,* 118 Pa. St. 189, 12 Atl. 307; *Kennedy v. Comm.* 182 Mass. 480, 65 N. E. 828, 829; *Francis & N. F. Co. v. King Knob C. Co.* 142 Wis. 619, 126 N. W. 39; *McAuliffe v. Jorgenson,* 107 Wis. 132, 134, 82 N. W. 706; *R. Hass E. & Mfg. Co. v. Springfield A. P. Co.* 236 Ill. 452, 86 N. E. 248, 252; *Allen v. Elwert,* 29 Oreg. 428, 44 Pac. 826; *Perrault v. Shaw,* 69 N. H. 180, 76 Am. St. Rep. 160; *Holter H. Co. v. Ontario M. Co.* 24 Mont. 198, 81 Am. St. Rep. 421; *Stewart-Chute L. Co. v. Mo. Pac. R. Co.* 33 Neb. 29, 49 N. W. 769; *Luttrell v. Knoxville, La F. & J. R. Co.* 119 Tenn. 492, 123 Am. St. Rep. 737, 750.

For the respondents there was a brief by *Kreutzer, Bird, Rosenberry & Okoneski,* and oral argument by *C. B. Bird* and *M. B. Rosenberry.*

WINSLOW, C. J.   Our statute (sec. 3314, Stats. 1898) gives a mechanic's lien to every principal contractor who furnishes materials "for or in or about the erection, construction, repair," etc., of any structure which becomes part of the freehold.   By another section (sec. 3315, Stats. 1898), under certain circumstances, a like lien is given to a materialman who furnishes any materials to the principal contractor "in any of the cases mentioned" in sec. 3314.   In either case,

therefore, the lien is given for materials furnished "for or in or about" the erection of the structure, and the exact question here is whether the materials which went into the cofferdam were furnished for, in, or about the erection of the permanent dam.    This is a new question in this state.    We have been referred to no decisions in any court covering the precise point, and we readily confess that it is a question involved in more than ordinary difficulty.    A decision either way could be supported by arguments fairly logical and convincing in their nature.

It will be useful at the outset to state briefly some of the general principles which this court has already laid down on the subject of mechanics' liens.    The first and perhaps the most important of these is the principle that mechanic's lien statutes are remedial in their character and are to be liberally construed so as to effectuate their remedial purpose.    *Vilas v. McDonough Mfg. Co.* 91 Wis. 607, 65 N. W. 488; *Kendall v. Hynes L. Co.* 96 Wis. 659, 71 N. W. 1039; *Winslow v. Urquhart,* 39 Wis. 260.    Another principle is that, if material be furnished to the owner for use in the construction of a building and the construction be actually commenced, the materialman is entitled to his lien even though the owner does not use the materials at all, but disposes of them elsewhere.    *Esslinger v. Huebner,* 22 Wis. 632; *Fitzgerald v. Walsh,* 107 Wis. 92, 82 N. W. 717; *Halsey v. Waukesha Springs S. Co.* 125 Wis. 311, 104 N. W. 94.    But if a subcontractor delivers materials to the principal contractor at the latter's place of business, which materials are neither incorporated into the structure, delivered upon the premises, nor placed under control of the owner of the structure, no lien arises, because the material cannot be said to have been furnished for, in, or about the erection of the structure. *Francis & N. F. Co. v. King Knob C. Co.* 142 Wis. 619, 126 N. W. 39.    This last named case is claimed by the appellant to decide that a subcontractor can have no lien unless

the materials he furnishes are actually incorporated into the building, and there is language in the opinion which gives color to that idea; but the case itself was simply a case where the subcontractor who claimed a lien had delivered a wheel to the principal contractor at the latter's place of business in Chicago, which wheel never reached the premises or the control of the owner of the building, but went into the hands of the receiver in bankruptcy of the principal contractor in Chicago and was sold by him to strangers. Under these circumstances, there being neither incorporation into the building, delivery upon the premises, nor control by the owner, it was held that there could be no lien. Whether there would be a lien in case there had been delivery upon the premises into the control of the owner but no incorporation into the building was not decided, although the fact was considered as significant that in previous cases it had been assumed or stated in *obiter* remarks that incorporation into the building was necessary in order to arouse a lien on behalf of the subcontractor. The only point actually decided, however, was that the facts of that case did not constitute a furnishing of materials which would arouse the lien.

It seems equally certain that the expressions in previous cases in this court, which are supposed to justify the idea that a subcontractor's lien is absolutely dependent upon physical incorporation of the materials furnished into the structure, do not so hold when construed with reference to the questions at issue in the cases themselves. Thus in *McAuliffe v. Jorgenson,* 107 Wis. 132, 82 N. W. 706, where the owner of a well-boring machine, who leased it to the principal contractor, who was digging a well, claimed a subcontractor's lien for the hire of the machine, it was said that under no theory could it be held that the plaintiff furnished any materials which entered into or became a component part of the well, but that the machine simply was a part of the contractor's plant. So in *Rinzel v. Stumpf,* 116 Wis. 287, 93 N. W. 36, the ques-

tion was whether certain shelving and counters in a store were intended to be fixtures, so as to become part of the realty, or intended to be personal property alone, and the question of lien was dependent on this question. It was in this connection said that "the materials furnished must become a part of the building," but it is very plain that in neither of these cases was it held that under no circumstances could a subcontractor acquire a mechanic's lien unless the materials furnished by him were actually incorporated into the finished structure.

It is very easy to see why, in case a subcontractor delivers materials to the principal contractor and the latter immediately sells them elsewhere, no lien should exist; but it is not easy to see why, in case the materials actually come into the possession and control of the owner and he retains or disposes of them, there should not result a lien just as well as in the case where the principal contractor makes a like delivery into the possession of the owner. The statute gives the subcontractor a lien for furnishing materials "in any of the cases" named in the section giving a lien to the principal contractor, and under the decisions of this court the delivering of materials into the control of the owner, regardless of the subsequent disposition of them by such owner, is one of the cases in which the principal contractor is given a lien.

We have thus dealt somewhat at length with the *Francis Case* because it is confidently claimed to be decisive of the present case, in that it holds that actual physical incorporation of the materials into the structure is essential to every subcontractor's lien. Inasmuch as it does not so hold, the court approaches the present case in no way hampered by anything which is said in that case, nor by the remarks in the previous cases cited in the *Francis Case*. In none of the cases was it necessary to decide, nor did the court attempt to decide, that physical incorporation of the materials was *in all* cases essential to the lien. Starting from this basis, the

question here really is whether this cofferdam, after its construction, is properly to be considered as an appliance or a part of the contractor's plant, like a portable engine, a derrick, a steam shovel, or tool shed, or as a collection of materials furnished "for or in or about" the erection and construction of the permanent dam. If it be an appliance, or, as said in the *McAuliffe Case,* a part of the contractor's plant, then it is very clear that there can be no lien for the materials which went into it. Appliances are, generally speaking, things which are expected to be used again and again. They are in effect tools. Appreciably diminishing perhaps in usefulness with the wear and tear of each building contract in which they are used, they still cannot be said to be materials furnished "for or in or about" the erection of any given structure, although after being used in the building of many structures they finally go to the junk heap. The reason for this rule seems very plain and no time need be spent in demonstrating its correctness.

If the cofferdam in the present case, though constructed specially for the building of the dam in question, was capable of and intended to be removed and used in building like structures elsewhere, even though suffering serious deterioration each time, and susceptible of use but a few times, it might well be held to be an appliance or part of the contractor's equipment; but such was not the case, and herein lies the difficulty. The court found that the piling material (constituting nearly one sixth of the *Barker & Stewart Lumber Company* claim) was substantially destroyed by use in the cofferdam. He further found that a major portion of the planks when removed were capable of use in some other similar cofferdam, and that the lumber had at the time of such removal a value of from four to five dollars per thousand feet, but that since such removal the defendant has used it, as authorized by the contract, in tramways and planking in carrying out the contract, at the completion of which use it has

no value except for firewood.    The planks cost $16 per thousand feet.    The words "major portion" are not very definite, but it seems quite evident from the opinion of the court sent up with the record that it does not mean much more than half; for in the opinion it is said that at the completion of the work there will remain about fifty per cent. of the lumber furnished, a large share of which will be unfit for anything but fuel, and the balance fit for use only in constructing other cofferdams and worth about $5 per thousand feet.

The planks constituted three fourths of the *Barker & Stewart* claim.    If half of them could be used for another cofferdam, that would mean that three eighths of the *Barker & Stewart* materials survived their use in the cofferdam, with a value of less than one third their purchase price, while the balance is either completely destroyed or has no value except for firewood.

That this is the proper construction of the findings on this question seems also quite certain from the following extracts taken from the able and exhaustive opinion filed by the circuit judge in deciding the case.    He says:

"I am of opinion that any material which in being used in process of construction of the structure is so changed as to lose its identity and fitness as material and as to become junk or scrap or firewood, is 'consumed,' and should be treated as material for which a lien is given if it was consumed by being applied directly to the work of construction; and I think materials are applied directly and intimately enough to create a lien when 'they are consumed by being directly applied to substances to be moved or changed to make a place for the structure or to be incorporated into it."    *George H. Sampson Co. v. Comm.* 202 Mass. 326, 88 N. E. 911, 915.

"Applying this rule, I think the materials which went into the cofferdam and were necessarily so used as to remain in the bed of the river or to be blown to pieces in taking out the cofferdam or broken so as to be fit only for firewood, or so much changed as to lose their identity as lumber and timbers,

are lienable, and I am of the opinion that the possibility of future use of a limited portion of such materials for another cofferdam does not take away the right of lien for that portion, especially in view of the testimony that the same at the end of the work of construction will have no real market value as materials, but might be worth $4 or $5 per thousand feet for special purposes.

"These materials were applied directly on the construction work to exclude the waters and thereby lay bare the earth and rock next to be removed, thus doing the first work of excavation. Excluding the water is of the same nature as moving the earth, both being necessary to reach the foundation and make way for the laying of concrete. These materials have been so completely or so nearly completely consumed that in my opinion they have lost their identity and have lost their fitness for any future use to any material extent.

"Our statute gives a lien for 'materials furnished for or in or about the construction.' It does not give a lien for tools, machinery, or equipment, but it does for 'materials.' I cannot see how the lumber and iron and other things that went into the cofferdam can be looked upon in any sense as tools or machinery or equipment. They are, however, essentially in their nature, building materials. Tools, machinery, and equipment survive the execution of the particular contract in their identical nature and are usually capable of being rented for a particular operation. The materials that went into the cofferdam were not of that nature. No contractor would dream of being able to lease or employ such materials for the job. Their life and substance have gone to the construction of the dam and tail race."

The conclusion of the trial court was based very largely upon the analogy between the present case and a class of cases decided in various courts, state and federal, where mechanics' liens have been granted for the value of explosives used in preparing the ground or rock for the building of the structure. In these cases the liens have been granted upon one general principle or idea, namely, that where the material is used directly upon the work or structure itself, instrumental in producing the final result, and is actually consumed in the

use, it may be said that in every true sense it has entered into and forms a part of the completed structure. This principle has been affirmed in the following cases: *Schaghticoke P. Co. v. G. & J. R. Co.* 183 N. Y. 306, 76 N. E. 153; *Hercules P. Co. v. K., La F. & J. R. Co.* 113 Tenn. 382, 83 S. W. 354; *Cal. P. Works v. Blue Tent C. H. Gold Mines* (Cal.) 22 Pac. 391; *Giant P. Co. v. San Diego F. Co.* 78 Cal. 193, 20 Pac. 419; *Giant P. Co. v. O. P. R. Co.* 42 Fed. 470; *Rapauno C. Co. v. G. & N. R. Co.* 59 Mo. App. 6; *George H. Sampson Co. v. Comm.* 202 Mass. 326, 88 N. E. 911; *Keystone M. Co. v. Gallagher,* 5 Colo. 23. None of the statutes under which liens were granted in these cases is any broader in its phraseology than the Wisconsin statute, and most of them are not as broad.

In Massachusetts it had previously been decided that there could be no lien for materials which did not form a part of the completed structure (*Boston F. Co. v. Dimock,* 158 Mass. 552, 33 N. E. 647), but it was said that explosives so used and consumed did in a general sense enter into the completed structure.

The logic of these decisions plainly does not rest upon the explosive character of the material nor upon the extreme rapidity of its consumption, but upon the fact that it is consumed necessarily in the process of constructing the building or other structure and that its life has gone into the fabric of the structure as effectively as has the stone or the cement or the lumber which retains its existence as a part of the structure. Is that the case with the materials in question here? We are of opinion that this question must be answered in the affirmative. The circuit judge aptly says that they have lost their identity and fitness for any future use to any material extent. "Their life and substance have gone to the construction of the dam and tail race." The fact that paltry sums might be realized were the lumber to be sold for firewood and

the hardware for scrap iron seems too slight a fact to have any material or substantial bearing.

It is certainly true that this doctrine must be carefully guarded or it may be carried to extreme and fanciful lengths. Thus it might be argued that upon the same principle coal that is used in portable engines, oil that is used in the lubrication of building machinery, and even food which is eaten by laborers, are all consumed in the construction of the building and hence are lienable materials. But all these things seem quite plainly distinguishable. They are at least one step further removed from the actual work of construction. They have neither physical contact nor immediate connection with the structure at any time. They are used only to facilitate and make possible the operation of tools, machinery, or men, which in their turn act upon the structure. The authorities are unanimous in holding that no lien accrues for such materials. *George H. Sampson Co. v. Comm.* 202 Mass. 326, 88 N. E. 911; *Philadelphia v. Malone,* 214 Pa. St. 90, 63 Atl. 539; *Standard Oil Co. v. Lane,* 75 Wis. 636, 44 N. W. 644; *Luttrell v. K., La F. & J. R. Co.* 119 Tenn. 492, 105 S. W. 565.

Appellant relies with confidence upon the cases of *Kennedy v. Comm.* 182 Mass. 480, 65 N. E. 828, and *Oppenheimer v. Morrell,* 118 Pa. St. 189, 12 Atl. 307. In the first of these cases it was held that no lien attaches for lumber used in the construction of forms to hold concrete in place during the process of building, which forms were afterwards removed and used several times in other buildings for like purposes. In the second it was held that no lien attached for lumber furnished to a bricklayer for the erection of temporary scaffolding in order to lay brick, the lumber not being intended to go into the building itself, but to be removed. In both cases the doctrine was stated that the materials must enter into the completed structure, but it is also apparent in both cases that

the materials were regarded as appliances or tools, and not as materials within the meaning of the lien laws. So far as the concrete forms are concerned, we are inclined to agree that where such forms are removed and are intended to be and in fact are used again and again in other buildings they should properly be regarded as appliances. The lumber of which they are made is not *furnished* "for or in or about" any given structure. As to the scaffolding case, it is to be remembered that the mechanic's lien law is class legislation and its scope is not to be unnecessarily enlarged by a too liberal construction. It would seem also, although nothing is said upon the point in the case, that the scaffolding was removed and was capable of being used again and again for the same purpose. Of course, if this were the case, there would be a strong argument that it merely formed an *appliance* or a part of the contractor's equipment. There may well be substantial differences in scaffolding so far as the lien laws are concerned. If a contractor has scaffolding which he takes from one job to another, it would seem pretty clearly to be a part of his equipment and not to be charged up as building materials against the first building on which it is used. But if a carpenter contractor building a wooden house incidentally used some of the lumber purchased for the job for temporary scaffolding, taking it down after it served its purpose and using such of it as may be usable in building operations and rejecting such as had become unfit for building purposes by reason of its use for scaffolding, the question whether a lien would attach for the entire quantity of lumber, including the part which had been made worthless as lumber by its use for scaffolding, would be an entirely different one. As the case is not before us, we express no opinion on the question, and we have discussed these two cases simply to show their non-applicability to the case at bar.

But one further question requires consideration. The

*Marshall-Wells Hardware Company* do business at Duluth, Minnesota, and as a convenience to Painter they advanced the freight on the hardware which they sold and shipped to him, amounting to $72.81, and the court allowed this amount on the theory that it was in substance a part of the purchase price of the materials. It is objected that it was not agreed in advance that the freight charges were to be part of the price of the goods. Looking at the substance of things rather than their names, we think that the item was properly allowed as a part of the purchase price of the material, although it may be called an advance of money. Had the contract been to deliver the goods in Wausau freight prepaid, the plaintiffs would unquestionably have added the freight to the purchase price and it would as unquestionably have been allowed. The exact form of the transaction cuts little figure. We think the amount was properly allowed as part of the delivered purchase price. 27 Cyc. 44, and cases cited in note 47.

*By the Court.*—Judgment affirmed.

Siebecker, J., took no part.