CURTIS AND POPE LUMBER COMPANY *vs.* VICTOR WOLMER & others.

Suffolk.    November 19, 1912. — January 29, 1913.

Present: HAMMOND, LORING, BRALEY, & DE COURCY, JJ.

*Mechanic's Lien.*

A dealer in lumber made with the owner of certain land a contract to furnish the lumber for the construction of a dwelling house on the land. More than thirty days after the house practically was finished, at the request of the owner and in substitution for lumber called for by the contract which he had not delivered, the dealer furnished lumber which was used to erect enclosures for receptacles for garbage and ashes placed twenty-five feet from the house and in no way attached to the realty or to any other structure, and within the next thirty days filed under R. L. c. 197, § 6, a statement to preserve his lien for his entire claim against the owner. A petition to establish the lien, afterwards filed, was referred to an auditor, who found that the statement was seasonably filed. A single issue, whether the lumber last delivered was furnished in good faith and under the contract, was submitted to a jury who answered it in the affirmative. A hearing then was had by a judge and conflicting evidence was offered as to whether the use, in connection with dwelling houses, of such enclosures as were built with the lumber last delivered, was general. The judge found that such use was not general, that the lumber last delivered was not used in the erection of a structure upon the land, and that therefore the statement was not filed in the time prescribed by R. L. c. 197, § 6; and dismissed the petition. *Held*, that the findings of the judge were warranted and that the petition was dismissed properly.

In a petition for the establishment of a mechanic's lien for lumber alleged to have been furnished under a contract and used for the construction of a dwelling house,

if the determination of the question, whether a statement made under R. L. c. 197, § 6, to preserve the lien was filed seasonably, depends upon whether the lumber last delivered was used for the construction of a structure upon the land, and it appears that it was used for the construction of enclosures for receptacles for garbage and ashes which were set apart from the dwelling house and were not attached to the realty, the fact that a single issue, whether the lumber last delivered was furnished by the petitioner in good faith and under the contract, was submitted to a jury who answered it in the affirmative, does not preclude the respondent, at the hearing by a judge of an application for the establishment of the lien, from introducing evidence tending to show, nor the judge from finding upon conflicting evidence, that the enclosures for whose construction that lumber was used were not structures upon the land within the meaning of R. L. c. 197, § 1.

DE COURCY, J.   On May 2, 1904, the petitioner entered into a contract with the respondent Wolmer to furnish certain lumber to be used in the erection of three dwelling houses on a parcel of land then owned by him.   Subsequently Wolmer divided the land into three lots, mortgaged one to the respondent Vose and the other two to the Charlestown Savings Bank; and these mortgagees, through foreclosure proceedings, have become owners in fee, and have intervened to contest the petitioner's claim of lien upon the property, — the respondent Wolmer having been defaulted.

Lumber was delivered under the petitioner's contract, at frequent intervals from May 6 until July 20, 1904, at which time one of the houses was substantially completed.   No other delivery was made until September 14, when fifty feet of the undelivered spruce and also four hundred and one feet of matched hard pine boards, in place of hemlock boards named in the original contract, and all of the value of $9.25, were furnished at Wolmer's request. The statement of lien required by R. L. c. 197, § 6, was filed in the Registry of Deeds on September 29, and a petition to enforce the lien was brought on November 8.   Subsequently the case was sent to an auditor,* and after his report was made there was submitted to a jury this issue of fact: "Was any part of the material supplied by the Curtis & Pope Lumber Company on September 14, 1904, furnished under the contract of May 2, 1904, and in good faith?"   To this the jury answered, "Yes."   The action was then heard by a judge of the Superior Court,† who found for the respondents on the ground that the petitioner had not established its lien, and accompanied his finding with a memorandum of facts.

---

\* Joseph R. Churchill, Esquire.                    † *McLaughlin*, J.

1. As to the petitioner's exception to the findings of fact: It is not disputed that the claim of lien is dependent upon the lumber furnished September 14. This was wholly used in the making of certain receptacles or boxes, for the use of the tenants, "designed for the reception and temporary deposit of ashes, garbage and offal." There was one of these about twenty-five feet in the rear of each house, resting upon the ground near the fence, and not fastened to anything; and each was about five feet long, two feet wide, three feet high in front and three and one half feet in the back, and large enough to hold two barrels. Upon conflicting evidence the judge found that while such receptacles for ashes and garbage were used to a very considerable extent, such use was not general, and that the contract which Wolmer made for the erection of the buildings did not provide for them, although it was not unusual to specify them in building contracts. We cannot say that these and the other conclusions of fact were not warranted by the evidence before us; and the judge had an opportunity, which we do not have, to estimate the credibility of the witnesses. *Schendel* v. *Stevenson,* 153 Mass. 351.

2. The second ruling of law,\* requested at the close of the evidence, was rightly denied. The answer of the jury established the fact that some at least of the material supplied by the petitioner on September 14 was a part of the lumber contracted for on May 2, and was furnished in good faith. Presumably this issue was prepared to meet the contention of the respondents that this last lumber was furnished collusively and fraudulently for the purpose of reviving a lien that had been dissolved by the failure to file a statement within thirty days after July 20, when the last prior delivery was made. But there were other facts for the petitioner to prove in order to maintain its lien; and the auditor's finding †

---

\* This ruling was as follows: "2. The answer of the jury to the question submitted settles everything which may be considered a question of fact and leaves no question before this court except, whether, as a matter of law, the ash houses might be held to be a part of the structures, as that word is used in the mechanics' lien law."

† The auditor's finding as to the materials supplied on September 14 was as follows: "The inference is easily drawn that these materials were furnished with the ulterior purpose of preserving its lien; and I so find, as requested by the defendants. Nevertheless I find that the substitution of hard pine for hemlock boards was approved by both parties to the contract, that the price

as to these was only *prima facie* evidence.  The most important were those bearing upon the question whether this material was actually used in the erection of a building or structure upon the land, within the meaning of the lien statute.  If the petitioner desired to have such further facts determined by a jury he should have applied for issues thereon.  R. L. c. 197, § 15.  *McAuliffe* v. *Dyme*, 179 Mass. 214.

3. The first ruling * requested involved certain elements of fact, such as the description, location, use and attachment to the realty of these receptacles.  See *Henry N. Clark Co.* v. *Skelton*, 208 Mass. 284.  In his memorandum the trial judge states: "On all the evidence I find that these 'houses' or receptacles were never applied so as to constitute parts of the building aforesaid, nor was there any structural connection between them and said buildings, nor were said boxes or the materials of which they were constituted used in the erection upon said land of said buildings, or any of them."  In order to base a lien upon the materials that entered into these boxes or receptacles it was necessary for the petitioner to show that its lumber entered into the completed structure and became a part of the realty.  *Kennedy* v. *Commonwealth*, 182 Mass. 480.  Accordingly it has been decided that a lien could not be maintained for portable ranges where it did not appear that they "were to be furnished as parts of the several houses in which they were put" or were "applied so as to constitute parts of the buildings."  *Boston Furnace Co.* v. *Dimock*, 158 Mass. 552.  In *Beatty* v. *Parker*, 141 Mass. 523, cited by the petitioner, a lien was maintained for the laying of a drain pipe because this was found to be necessary to the house and a part of it, and was included in the building contract.  And in *Reid* v. *Berry*, 178 Mass. 260, a lien for grading was allowed to stand as being

---

or value thereof and the adaptation to the proposed use were the same, and that they, with the fifty feet of spruce, were furnished in compliance with the contract of May 2 and in good faith, and I find and rule, were also actually used in the erection of said three dwelling houses, and that the statement of lien was therefore seasonably recorded."

    * The first ruling requested was as follows: "1. That upon all the evidence as a matter of law, each of the ash houses which were constructed in the rear of the three houses upon the land described in the petition for materials furnished by the petitioner is a part of the buildings or structures erected upon the land within the meaning of" R. L. c. 197.

"reasonably necessary to the proper construction and occupation of the house," and consequently "considered as a part of its erection." In the present case the receptacles were at a distance from and in no way structurally connected with the buildings. They were personal property, moved upon and not attached to the real estate. They were not included in the building contract, and presumably were not contemplated when the contract for lumber was made with the petitioner, as it brought an action at law on the contract before the lumber for these boxes was furnished. Their use was not general, much less was it necessary for the dwelling houses; and they served merely to cover the ash barrels and garbage cans. Upon the evidence and findings of fact we cannot say that the judge erred in refusing to rule as matter of law that these receptacles were a part of the buildings or a permanent erection intended for the improvement of the real estate on which a lien is claimed.

*Exceptions overruled.*

*W. B. Grant,* (*W. F. Mooers* with him,) for the plaintiff.

*J. K. Berry,* (*W. W. Stover* with him,) for the defendants.