NEUMANN, Appellant, vs. STRANDT, Respondent.

*April 4—May 8, 1928.*

*Mechanics' liens: Architects' services: Building planned for future expansion.*

An owner of a lot engaged an architect to design a building to cover the entire lot, but, finding the cost of the improvement prohibitive, proceeded to erect it in units so constructed as to permit future additions. *Held,* that there was an incorporation of the services of the architect in the building, and for the value thereof, and for the value of his services rendered as superintendent of construction, the plaintiff architect is entitled to a lien.

APPEAL from a judgment of the circuit court for Milwaukee county: E. T. FAIRCHILD, Circuit Judge. *Reversed.*

Action begun June 8, 1926; judgment entered November 26, 1927. Mechanic's lien. This is an action to foreclose a mechanic's lien. Plaintiff claimed a lien for services rendered to the deceased husband of the defendant in the construction of a building. Only a part of the architect's services were held lienable. Judgment was entered accordingly, from which the plaintiff appeals.

For the appellant there was a brief by *Orth & Orth* of Milwaukee, and oral argument by *Charles A. Orth.*

For the respondent there was a brief by *Paul, Ebert & Paul* of Milwaukee, and oral argument by *Harold H. Paul.*

ROSENBERRY, J. There is no dispute in this case as to the reasonable value of the services rendered by the plaintiff. These amount to $2,045, upon which $500 has been paid. Of the $2,045 services, the court found that $740 was lienable, deducted the $500 paid, and gave the plaintiff judgment for the remainder of $240 and interest.

The sole question involved here is the extent of the plaintiff's right to a lien upon the building in question. The first work done by the plaintiff for the deceased was to prepare a sketch or preliminary plan for the building, covering the entire lot, fronting eighty feet to the west on Third street and one hundred sixty feet to the north on Burleigh street. The plaintiff then drew plans for a garage and apartment building covering the east sixty-two feet of the lot. This was built and paid for. The chimney was of sufficient size to accommodate a building covering the entire lot, and the walls as constructed contemplated additions to the building. They were not fireproof. A permit to construct the building with such walls was secured on the theory that they were but temporary. After the construction of this building, plans for a two-story building covering the remainder of the lot were completed February 11, 1924. On March 3, 1924,

plans for a three-story building covering the entire lot were also completed.   On March 1, 1924, plaintiff submitted to the deceased a detailed estimate according to bids of the cost of the two-story building.   As a part of the cost of the building architect's fees of $2,705 were included.   On September 25, 1924, plaintiff submitted to deceased a comparative statement of the amount of income from a three-story building as compared with a two-story building.   Nothing further was done until March 12, 1925, when plaintiff prepared plans for a second unit, 37 feet 11 inches by 71 feet, two stories in height.   The plans for this unit were traced off the original two-story plan covering the entire lot.   Plaintiff contends that it was a unit of that plan.   This building was erected at a cost of $18,649.60.   The plaintiff claims there is due him $2,045, arrived at as follows:

Fee for drawing original two-story plan at 4 per cent $2,700
     Less one-third for inspection............... 900

Amount due for plans....................... $1,800
Amount due for services rendered in inspecting the
     erection of the $18,000 unit................ 245

     Total amount due..................... $2,045

Our statute, sec. 289.01, specifically provides that every architect . . . who performs any work or labor, furnishes any materials or prepares any plans, specifications or estimates: (a) For or in or about the erection, construction, repair, protection or removal of any dwelling house, building . . . shall have a lien thereupon . . . and in and to the land upon which the same is situated, for such services.

The theory of the lien statute is that those furnishing material or labor in or about the construction of a building, which materials and services operate to increase the value of the premises, shall have a right to recoup themselves in the event that such materials and services are not paid for by resort to the building and land upon which it is situated in

the manner provided by the statute. Thus materials and services can be furnished upon the credit of the building to be erected and the land upon which it stands. Otherwise the owner of real estate might, as against materials furnished and services rendered, unjustly enrich himself at the expense of the materialman furnishing materials and those rendering services. In the early case of *Esslinger v. Huebner,* 22 Wis. 633, it was held that where materials were sold upon the credit of a building to be erected, the owner could not, by thereafter disposing of them for money and then procuring other materials, defeat the right of the materialman to a lien; and so in *Barker & Stewart L. Co. v. Marathon P. M. Co.* 146 Wis. 12, 130 N. W. 866, it was held that the lumber and materials used in the erection of a cofferdam and concrete forms, although not physically incorporated into the completed structure, nevertheless entered into the value of the completed structure and the materialman was entitled to a lien therefor. At first, courts were not inclined to the view that architects' services were incorporated in a building so as to entitle the one furnishing them to a claim for a lien. The matter is now made clear and definite by statute, and we see no reason why architects' services should not be treated the same as other services rendered in and about the construction of a building. Here the building was originally intended to cover the entire lot, but the cost was prohibitive. The owner proceeded to erect the building in units. The services of the plaintiff were accepted. The units erected had reference to future additions. In the ordinary course of practice the architect might have waived his claim as to the unconstructed units and only claimed the amount due for plans and supervision actually availed of by the erection of a building by the owner. In this case he rendered a statement indicating that fact. By the death of the owner the matter was brought to an issue and the architect was obliged to determine whether he would claim presently or waive claim

for the services rendered, the value of which is abundantly established.

It is held that services rendered by an architect and appropriated by the owner, whereby a building is made more adaptable and useful because the building is so constructed as to receive additions thereto, amounts to an incorporation of the value of that service in the building so as to entitle the architect to a lien thereon. If a plan for a five-story building is prepared and accepted by the owner, and the owner changes his mind and erects four stories in accordance with the plan as furnished, that does not diminish the value of the architect's services in the preparation of the plan used by the owner. The fact that the extensions in this case were to be upon the surface rather than in the air does not, it seems to us, alter the principle or diminish the right of the architect to claim a lien for the enhanced value of the property due to the service rendered by him. The plan of the last unit was made by copying it off of the tracings for the completed building with such alterations as were necessary to make it useful in the meantime. The architect seeks no extra compensation for these necessary alterations, but seeks merely the reasonable value of the services rendered in making the original plan plus the value of the services rendered for superintendence of construction of that unit erected, and to this we think he is clearly entitled. It is also clear that the claim of plaintiff was seasonably filed.

*By the Court.*—Judgment appealed from is reversed, and cause remanded with directions to enter judgment in favor of plaintiff as indicated in this opinion.

OWEN, J., dissents.