JOSEPH TRAPP, Doing Business under the Name and Style of ROBERT TRAPP SON, Plaintiff, *v.* SEABOARD SURETY COMPANY, Defendant.

Supreme Court, Erie County, December 30, 1936.

*John Swerdloff,* for the plaintiff.

*James O. Moore* [*James O. Moore, Jr.,* of counsel], for the defendant.

HINKLEY, J. This action is brought under the terms of two similar bonds given primarily to protect the city of Buffalo by reason of any default of the general contractor engaged in two public improvements. The facts are not in dispute. Erie Contracting Company agreed by separate written contracts with the city of Buffalo to repave Forest avenue and Earl place. Defendant executed its two separate bonds conditioned for the payment by Erie Contracting Company for all materials used and services rendered in the execution of the contracts between Erie Contracting Company and the city of Buffalo. The bonds also stipulated causes of action to any person or corporation as though named in the bonds who or which should furnish material or render services " in or about the execution of such contracts." During the progress of the improvements it became necessary to sharpen tools employed in cutting the stones used for curbing. Two sets of tools were needed. Each night a dull set was left with plaintiff and a sharpened set delivered to the sites of the improvements. Plaintiff at some distant place performed the services required to sharpen the tools. It is for such services that plaintiff sues. The amount and value of his services are not in dispute.

The sole question involved is one of law, to wit, whether the services rendered by plaintiff in sharpening the tools are within the contemplation of the bonds. In the clauses of the bonds which yield to an individual such as plaintiff a cause of action under the bonds, even though plaintiff is not named therein, are the words " services rendered *in or about* the execution of such contract." Viewing the wording of the bonds in the abstract apart from judicial precedent, the plaintiff would be entitled to recover if he had stood at the places of public improvement and sharpened the tools as they were used. Surely then he would be rendering services " in or about the execution of such contract." To express this thought more graphically there is now in progress the construction of a sewer in Delevan avenue at a depth of fifty feet below the street level. Assuming that plaintiff were standing at that distance below ground sharpening the drills used for cutting the holes for the insertion of dynamite, would not any sane person, layman or otherwise, agree that he was working in or about the execution of the improvement? If so, then how could the court determine at what distance, if any, he would cease to be *in and about* the work?

Confusion arises in the study of the question here involved due to the erroneous attempt to interpret the words of the bonds in the light of judicial interpretation of somewhat similar wording in section 5 of the Lien Law. Such attempt at analogy is irrelevant

in this case in the light of an authoritative decision squarely in point and unquestionably controlling upon the court at this time. (*Zipp* v. *Fidelity & Deposit Co. of Maryland,* 73 App. Div. 20 [4th Dept. 1902].) That decision involves a bond similar to those in this action and emphasizes the language of the clause " in or about the execution of such contract." The court there held that coal used in generating steam to blast and cut out rocks was materials furnished in the execution of such contract. The court said: " The generation of power was essential in the performance of the contract, and when the defendant became responsible for the payment of ' all material used and services rendered in the execution of such contract,' it might have expected that fuel was to be consumed in the undertaking. The coal used entered into the execution of the agreement and formed a part of the value of the work done as much as the labor of the masons or of the men who aided in hoisting the stones into position to make up the wall. The materials used need not be a permanent constituent of the structure itself, but must be necessarily incident to the execution of the agreement, to come within the purview of the defendant's contract, and the coal consumed in carrying on the work is of that character."

The court in that case erred in its opinion that " under the Mechanics Lien Law we apprehend a lien would attach for fuel furnished under the circumstances here shown." For later, in 1914, in *Schultz* v. *Quereau Co.* (210 N. Y. 257), the contrary was held. The court in the last decision pointed out a real and indestructible line of demarcation between dynamite applied to the earth and rent of a steam shovel used in the construction of a public improvement and by a course of reasoning determined that coal used in boilers of road roller and traction engines was not materials furnished for the construction of the highway within the meaning of the Lien Law. That decision was severely criticized in Lawyers Reports Annotated (1915E, pp. 986, 987) as denying to laborers and materialmen the protection which the law broadly professes to give them merely because their minds were not trained to indulge in such unsubstantial distinctions as those which constitute the basis of the decision.

Were this an action upon a mechanic's lien this court would be constrained, in the light of the last mentioned decision, to hold that sharpening of tools was not service directly applied to the earth even though the sharpened edges of the tools would lose their identity and cease to exist as a separate article. For in the final analysis the Court of Appeals has decreed that a materialman shall lose the protection of the mechanic's lien statute because his coal was applied to the machines and not directly to the highway.

The sharpening of the tools in the instant case was applied to the instruments and not to the stone curbing set at the places of improvement. And if this case involved a lien the claims would not be protected by the statute.

Divergent lines of judicial reasoning are sharply and clearly illustrated in two decisions. The Court of Appeals, in *Schultz* v. *Quereau Co.* (*supra*), cited the case of *Barker & Stewart Lumber Co.* v. *Marathon Paper Mills Co.* (146 Wis. 12; 130 N. W. 866), and while not expressing any opinion as to that decision, still quoted with approval the following language: " It is certainly true that this doctrine must be carefully guarded or it may be carried to extreme and fanciful lengths. Thus it might be argued that upon the same principle coal that is used in portable engines, oil that is used in the lubrication of building machinery, and even food which is eaten by laborers, are all consumed in the construction of the building and hence are lienable materials. But all these things seem quite plainly distinguishable. They are at least one step further removed from the actual work of construction. They have neither physical contact nor immediate connection with the structure at any time. They are used only to facilitate and make possible the operation of tools, machinery, or men, which in their turn act upon the structure."

The Circuit Court of the United States for the Southern District of New York in *City Trust, Safe Deposit & Surety Co.* v. *United States* (147 Fed. 155) said: " But no especially liberal construction is required to bring the materials supplied in this case within the protection of the act. The labor expended by men in wheeling barrows of material from the point of receipt to the place where it is to be used; in working hand pumps to clear an excavation of water; in turning the cranks of a hoisting derrick, so as to raise materials to a proper elevation — all such labor is so manifestly labor in the prosecution of the work that no one could have the hardihood to contend that it is not within the express terms of the statute. If the contractor, whether for purposes of economy or of expedition, elects to do this work by the power of steam, instead of the power of human muscles, it is difficult to understand how it can be logically contended that such power is not supplied in the prosecution of the work, or that the cost of the coal which produces it should not be equally within the protection of the same statute."

The language of the Lien Law, section 5, is, of course, an act of the Legislature. The language of the bonds is also of legislative concept and creation (Laws of 1899, chap. 577, amending section 478 of the then Charter of the City of Buffalo; section 478 of the Revised City Charter of 1908; section 373 of the Commission Charter;

chapter 3, section 11, of the Ordinances of the City of Buffalo). This court would like to indulge in a legalistic game of hide and seek in an endeavor to discover the elusive legislative intent in each instance, for that field of alleged research has produced more fiction and plastic logic in the realm of law than any other. Here, for instance, in the legislation concerning the language of the bonds in question for public improvement one might indulge the thought which is seemingly basically sound that the Legislature in its modern up-to-date humanitarian desire to seek out and shield the obscure laborers and materialmen by protecting them even though not so nominated in the bonds, has sought to give them complete protection if they gave of their material or services to the improvement so long as they were in or about the job. However, until some future court shall attach to bonds given for public improvement the analogy of the reasoning in the interpretation of the Lien Law, the case of *Zipp* v. *Fidelity & Deposit Co. of Maryland* (*supra*) is controlling. Some higher court may sometime say that the plaintiff, because he was not at the scene of the improvement, had neither physical contact nor immediate connection with the structure at any time; that he was at least one step removed from the actual work of construction and that his services only made possible the operations of the tools which in their turn acted upon the structure; that, therefore, he was not performing services in or about the rendition of the contract. But until the happening of that event this court is yielding to this laborer who is worthy of his hire that relief which the common sense and plain wording of the bonds in certain definite and clear language intended and did give to him.

Judgment may be entered in favor of plaintiff for the amount demanded in the complaint.